## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Benjamin Coleman, through his Conservator Robert Bunn, Esq. | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | Civil Action No. _____ |
| The District of Columbia | ) ) ) | |
| Defendant | ) | |

## COMPLAINT

Plaintiff Benjamin Coleman, through his conservator Robert Bunn, Esq. and by his undersigned attorneys, brings this action on his own behalf and all others similarly situated against defendant the District of Columbia and demanding a trial by jury.  For his Complaint against defendant the District of Columbia, plaintiff alleges the following:

### I.    NATURE OF THE ACTION

1.    When a real property owner in the District of Columbia fails to pay real property taxes, District of Columbia law permits the government to auction to third parties a lien for those unpaid taxes in the form of tax certificates.  Certain companies from around the United States specialize in purchasing these tax certificates, creating a booming business for property tax liens in the District of Columbia.

2.    District of Columbia law grants purchasers of tax certificates the right to foreclose upon real property in order to collect the unpaid property taxes, plus interest, penalties, expenses and attorney's fees.  But that is not all: District of Columbia law grants the purchaser of the tax certificate the deed and full title to the property of the homeowner upon foreclosure.  This taking of property from residential property owners

1

and transferring of that property to tax certificate purchasers as set forth in District of Columbia law violates the Fifth Amendment of the United States Constitution.

3.      Current District of Columbia law expressly permits a purchaser of a tax certificate to foreclose on the real property and for the court to "vest title in fee simple in the purchaser." D.C. Code § 47-1370(b).  Under this law, no matter how much equity is in the property, and no matter how small the owed taxes, District of Columbia law takes title to the property and all equity in the property from the homeowner and transfers it upon foreclosure to the company that purchases the tax certificate.

4.      For example, if a homeowner fails to pay $10,000 in property taxes, and a certificate is sold, upon foreclosure, the purchaser of the certificate will receive the unpaid taxes, plus interest, penalties, expenses and attorney's fees, but will also receive title to the home, even if the home is worth hundreds of thousands of dollars and there is no mortgage on it.  Neither the District nor the purchaser is under any obligation to reimburse the homeowner the amount by which the sale of the home exceeds the unpaid taxes, interest, penalties, expenses and attorney's fees.  Instead, the tax certificate purchaser retains the full amount of the equity, and the homeowner loses both his home and all of his equity in the home.

5.      This case accordingly arises out of the District of Columbia's unconstitutional law and practice of taking and selling to third parties the homes of its citizens with unpaid real property taxes.

6.      The Fifth Amendment of the United States Constitution limits the power of the government to take property by prohibiting such a taking in the absence of a public purpose. When the government does take property for a public purpose, such as when a

highway is built, the government takes title to the property and pays compensation to the property owner. Where there is no public purpose, the Fifth Amendment prohibits such a taking. For example, it would be unthinkable under the Fifth Amendment for the government to foreclose upon a tax lien on a property, and then take the remaining balance of equity in the property for itself after the taxes, interest and expenses are paid.

7.     District of Columbia law commits the unthinkable and even worse. The District takes the property of homeowners and then transfers title to that property not to the government, but to a private party (buyers of tax certificates) seeking profits from foreclosures. Upon foreclosure, the private party receives all equity in the property even after the tax lien, plus interest, penalties, expenses and attorney's fees, has been fully satisfied.

8.     From the earliest years of this nation's constitution, it has been recognized that "It is against all reason and justice to presume that the legislature has been entrusted with the power to enact a law that takes property from A and gives it to B." *Calder v. Bull*, 3 U.S. 386 (1798) (Chase, J.). This guiding principle has been recognized repeatedly as a core tenet of the Fifth Amendment of the U.S. Constitution and as a shield against the arbitrary abuse of government power.

9.     The victims of the abuse of government power at issue in this case are among our most vulnerable citizens. Often it is low-income citizens who are unable to pay real property taxes and who are preyed upon by purchasers of tax certificates. Citizens who not only fail to pay a property tax bill, but face foreclosure due a limited tax bill -- despite equity in their homes -- are ordinarily those who are incapable of managing their affairs and exercising legal rights. These citizens face the risk of losing their homes over

relatively small amounts in unpaid property taxes. Many dozens and perhaps more such homeowners have lost their homes due to the District of Columbia's unconstitutional law. Professor Christopher Leinberger of George Washington University has described the law as "destroying lives."

10.    The plight of plaintiff Coleman illustrates the dangers of the government power that has been abused here. Mr. Coleman is a retired Marine sergeant who at the time of foreclosure suffered from dementia. At the time of foreclosure, he was incapable of protecting his rights or managing his financial and legal affairs.

11.    In 2006, Mr. Coleman forgot to pay a $134 real property tax bill on his home. His home had no mortgage and was worth approximately $200,000. The District of Columbia government then put a lien on his home, adding $183 in interest and penalties. At a District of Columbia auction, a Maryland company then purchased a tax certificate for Mr. Coleman's tax lien and demanded $4,999 to remove the lien, including interest, penalties, expenses and attorney's fees. The Maryland company eventually foreclosed upon Mr. Coleman's home and title to Mr. Coleman's home was transferred to the Maryland company. Federal marshals evicted Mr. Coleman from his home in the summer of 2011. The Maryland company, after evicting Mr. Coleman, sold his home for $71,000. Mr. Coleman received no proceeds from the sale. A court only later appointed a conservator for Mr. Coleman.

12.    Plaintiff brings this action under 42 U.S.C. § 1983 to obtain damages, prejudgment interest and the costs of the suit, including reasonable attorney's fees, and to obtain declaratory relief by reason of the District's violation of the Fifth Amendment of the United States Constitution.

## II.   JURISDICTION & VENUE

13.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

14.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and omissions at issue in this action took place in this District.

## III.   PARTIES

15.   Plaintiff Benjamin Coleman is a citizen and resident of the District of Columbia.  By order dated August 9, 2012, the Superior Court of the District of Columbia appointed Robert Bunn, Esq. as both a guardian to provide "continuing care and supervision" of Mr. Coleman, as well as a general conservator to manage Mr. Coleman's legal and financial affairs.

16.   Defendant District of Columbia is an independent municipality under the jurisdiction of the United States Congress.

## IV.   BACKGROUND

### A.  BACKGROUND ON DISTRICT OF COLUMBIA LAW

17.   D.C. Code § 47-1331(a) provides that an unpaid real property tax shall "automatically become a lien on the real property on the date the tax was due and unpaid or converted to a real property tax." D.C. Code § 47-1331(a) (2013).

18.   The Code further provides that the District shall sell all real property on which the tax is in arrears unless otherwise provided by law. *Id.* § 47-1332(a).

19.   At least thirty days before a property is advertised for sale, the District must mail a notice of delinquency to the person last appearing as owner of that property, *id.* § 47-1341(a), and publish the notice in two newspapers. *Id.* § 47-1342(a).

20.     If the taxes are still not paid, the District may then sell each parcel of property in its entirety at public auction on the date stated in the notice of delinquency. *Id.* §§ 47-1343, 47-1346(a)(1)(A).

21.     At the public auction, the property is sold to the highest bidder, but not for less than the amount of the taxes owed unless otherwise provided. *Id.* § 47-1346(a)(2), (c).

22.     If the District sells the property to a separate purchaser, the District shall then deliver a certificate of sale to the purchaser. *Id.* § 47-1348(a).  This is known as the tax certificate.

23.     At any time before the foreclosure of the right to redemption becomes final, the original owner of the property, or any other person who has an interest in the property, may redeem the property. *Id.* § 47-1360.   The amount necessary to redeem the property includes the purchase price with taxes, interest, penalties, expenses and attorney's fees paid by the purchaser on behalf of the property. *Id.* § 47-1361.  If the owner seeks to redeem before the purchaser files an action to foreclose, the redemption amount may include an additional $300 for the purchaser's legal fees. *Id.* § 47-1377(a)(1).  If, however, the owner seeks to redeem after the purchaser has filed an action to foreclose, the redemption amount includes "all expenses as allowed by the Superior Court," including reasonable attorney's fees. *Id.* § 47-1377(a)(2).  The rate of interest on all amounts due, owing or paid for purposes of redemption (whether relating to real property sold or bid off to the District) is 1.5% per month or portion thereof. *Id.* § 47-1334.

24.     At any time after six months following the date of the sale of the tax certificate, the purchaser may file a complaint with the Superior Court to foreclose the right of redemption. *Id.* § 47-1370(a).  If the court orders foreclosure, the court bars any further right of redemption. *Id.* § 47-1370(b)(1).

25.     A final judgment foreclosing the right of redemption directs the District to execute and deliver a deed to the purchaser in fee simple on payment to the District of the amount that would be required to redeem under § 47-1361. *Id.* § 1382.

## B.  FORECLOSURE ON MR. COLEMAN'S HOME

26.     Plaintiff Benjamin ("Bennie") Coleman, a 76-year-old Vietnam veteran and retiree, owned a home at 221 44th Street NE, Washington, D.C. 20019.

27.     At all relevant times to this Complaint, Mr. Coleman has suffered from severe dementia.

28.     In 2006, Mr. Coleman neglected to pay a $133.88 property tax obligation.

29.     Pursuant to D.C. Code §§ 47-1330 to 47-1385, defendant District of Columbia ("District") thereafter placed a lien on Mr. Coleman's home.  As part of the lien, the District also added $183.47 in penalties on top of this tax obligation.

30.     In July 2007, the District offered the lien on Mr. Coleman's home in a public tax sale for $317.35 following the above statutory provisions.  The lien was then sold at auction to Embassy Tax Services, LLC ("Embassy Tax Services").

31.     Embassy Tax Services is a Maryland company owned by Steven Berman.

32.     Following the sale, Mr. Coleman retained the right to redeem his property by paying the amount of the tax certificate sold to Embassy Tax Services.  Based on District

law, the District set January 13, 2008 as the date for initiation of an action to foreclose Mr. Coleman's right of redemption.

33.     On February 28, 2008, Embassy Tax Services filed a complaint in the Superior Court of the District of Columbia Civil Division to foreclose Mr. Coleman's home and right of redemption due to Mr. Coleman's failure to satisfy the lien.

34.     In addition to the lien amount of $317.35, Embassy Tax Services demanded $4,999 in interest and additional expenses from Mr. Coleman to satisfy the obligation. These additional expenses included court costs, attorney's fees, expenses incurred for personal service of process, expenses incurred for service of process by publication and fees for the title search.

35.     The District was named a statutory defendant in the foreclosure case, but did not file any specific claims or defenses.

36.     On September 8, 2008, the court granted Embassy Tax Services' motion to extend time for service, granting it until December 1, 2008 to serve Mr. Coleman.  The court additionally set a scheduling conference for October 1, 2008.

37.     On September 24, 2008, Mr. Coleman's son, Benjamin Coleman III, submitted a handwritten statement to the court stating that he had recently moved back into town and had discovered that his father was "living alone and had not kept to his medicine."  Mr. Coleman III further requested a postponement of the October 1, 2008 scheduling conference and offered to "get most of the payments in on Oct. 3, 2008."

38.     The court subsequently set a status hearing for November 12, 2008 that was later rescheduled for March 11, 2009.

39.     As a result of this hearing, the court gave Mr. Coleman until May 27, 2009 to make full payment of the lien and the additional expenses demanded by Embassy Tax Services.   In the event that Mr. Coleman did not fulfill his obligation by the stated deadline, the court permitted Embassy Tax Services to file a motion to foreclose Mr. Coleman's home and right of redemption and to request the court to direct issuance of the deed to Mr. Coleman's home.

40.     On May 26, 2009, Mr. Coleman III again submitted a handwritten statement to the court.  Mr. Coleman III noted that his father had "been under the weather," but that his father had paid all of the owed taxes.  Though he recognized that his father would have to make arrangements to pay the additional expenses claimed by Embassy Tax Services, Mr. Coleman III hoped that a resolution could be reached and offered for his father to make monthly payments of $850 beginning June 1, 2009.

41.     Mr. Coleman did not appear at the May 27, 2009 status hearing.  As a result, the court unsuccessfully attempted to contact Mr. Coleman III.  Acknowledging Mr. Coleman III's proposed payment plan, the court stayed the redemption deadline and directed both Mr. Coleman and Mr. Coleman III to appear before it on June 24, 2009.

42.     The June 24, 2009 hearing was continued to December 9, 2009, and then to May 5, 2010, and finally to July 7, 2010.

43.     On March 31, 2010, Embassy Tax Services filed a motion for default judgment and judgment on the pleadings against Mr. Coleman.  Embassy Tax Services premised its motion in particular on Mr. Coleman's failure to appear, file a responsive pleading or file a notice of interest in the property on a timely basis.

44. On June 11, 2010, the court granted Embassy Tax Services' motion for default judgment and judgment on the pleadings. As part of this order, the court directed the District to execute and deliver a deed for the property to Embassy Tax Services.

45. On the same day, the court issued a separate judgment order extinguishing any title, rights, claims and interests that Mr. Coleman had in the property.

46. On August 31, 2010, the District executed and delivered a deed to the property to Embassy Tax Services. Embassy Tax Services recorded this deed with the District on September 9, 2010. On this date, the home had a fair market value of approximately $200,000.

47. On December 16, 2010, Embassy Tax Services filed a petition for writ of possession with the Superior Court. In the petition, Embassy Tax Services asserted that Mr. Coleman was still residing at his former home and requested the court to issue a writ of possession so that Mr. Coleman would be evicted.

48. Embassy Tax Services additionally filed a complaint for possession of real property in the Landlord and Tenant Branch on June 9, 2011.

49. On June 22, 2011, a default judgment was issued in the Landlord and Tenant Branch case after Mr. Coleman failed to appear at a hearing on the complaint. Embassy Tax Services later successfully petitioned the court to amend the default judgment to a non-redeemable judgment.

50. On August 5, 2011, armed U.S. Marshalls arrived at Mr. Coleman's home and ordered Mr. Coleman to leave.

51. In October 2011, Embassy Tax Services sold Mr. Coleman's former home in a distress sale for $71,000.

52.     Mr. Coleman now lives in a group home, a mile from his former house, for which he pays rent.

## V.     **CLASS ALLEGATIONS**

53.     Plaintiff brings this action on his own behalf and under Federal Rule of Civil Procedure 23(b)(3) as a representative of a class defined as all persons who owned residential property on which the District of Columbia assessed a lien for an unpaid property tax deficiency, and where following the sale of a tax certificate, such property was foreclosed upon and title transferred pursuant to D.C. Code §§ 47-1330 to 47-1385 (the "Damages Class").

54.     Plaintiff further brings this action on his own behalf and under Federal Rule of Civil Procedure 23(b)(2) as a representative of a class defined as all persons who own or owned residential property on which the District of Columbia has assessed a lien for an unpaid property tax deficiency, and for which lien the defendant subsequently sold the right to foreclose the right of redemption for the property pursuant to D.C. Code §§ 47-1330 to 47-1385 (the "Declaratory Relief Class").

55.     Defendant the District of Columbia has acted unconstitutionally on grounds that apply generally to both classes.

56.     Members of the class are numerous and joinder is impracticable.  The number of homeowners who have lost their homes due to the unconstitutional provisions of District of Columbia law at issue in this case is in the dozens and is a number closer to fifty.

57.     Plaintiff's claims are typical of the members of each class. Plaintiff and all members of the plaintiff classes were damaged or face the risk of injury by the same wrongful conduct of the defendant.

58.     Plaintiff and Class Counsel will fairly and adequately protect and represent the interest of the plaintiff classes. The interests of the plaintiff are coincident with, and not antagonistic to, those of the classes.

59.     Questions of law and fact common to the members of the classes predominate over questions, if any, that may affect only individual members because defendant the District of Columbia has acted on grounds generally applicable to each of the classes. Such generally applicable conduct is inherent in the defendant's application of D.C. Code §§ 47-1330 to 47-1385 to the plaintiff classes.

60.     Questions of law and fact common to the classes include:

    a.  whether defendant's law and actions were in violation of the Constitution of the United States;

    b.  whether defendant took the property of plaintiff and the Damages Class without a public use;

    c.  whether plaintiff and the Damages Class are entitled to damages;

    d.  whether in the alternative the defendant sold the right to foreclose the right of redemption for the property of plaintiff and the Damages Class without providing just compensation, and thus whether plaintiffs and the Damages Class are entitled to just compensation; and

    e.  whether plaintiff and the members of the Declaratory Relief Class are entitled to declaratory relief.

61.     Class action treatment is the superior (if not the only) method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender.   The benefits of proceeding through the class mechanism, including providing injured persons with a method of obtaining redress on claims that it might not be practicable to pursue individually, substantially outweigh the difficulties, if any, that may arise in the management of this class action.

## VI.     STATUTE OF LIMITATIONS

62.     Mr. Coleman was *non compos mentis* due to his severe dementia at the time that the Superior Court foreclosed his right of redemption and for some time before. This case warrants tolling of the statute of limitations pursuant to D.C. Code § 12-302.

63.     Due to his degenerated mental state, Mr. Coleman was unable to manage his business affairs or understand his legal rights or liabilities at the time that the Superior Court issued its orders in this case or when the deed to his home was taken from him and transferred.

64.     Accordingly, Mr. Coleman was completely incapable of handling his affairs and legal rights at the time that his right of action accrued.

65.     The Superior Court Probate Division designated Mr. Coleman as "incapacitated" on August 9, 2012.   In that determination, the court found that Mr. Coleman's "ability to receive and evaluate information effectively or to communicate decisions is impaired," including with respect to Mr. Coleman's ability to "obtain,

administer, or dispose of real and personal property, intangible property, business property, benefits, and income."

66.     The court further found that Mr. Coleman's impairment restricted his ability to "provide health care, food, shelter, clothing, personal hygiene, and other care," as well as his ability to "acquire and maintain those life skills that enable [him] to cope more effectively with the demands of [his] own person and environment."

67.     As a result, the court appointed Robert Bunn, Esq. as both a guardian to provide "continuing care and supervision" of Mr. Coleman, as well as a conservator to manage Mr. Coleman's legal affairs.

68.     Throughout the period at issue in this Complaint, Mr. Coleman's dementia has left him unable to engage in rational thought and deliberate decisionmaking sufficient to pursue his claims alone or through counsel.

69.     For these reasons, tolling of the statute of limitations is warranted pursuant to D.C. Code § 12-302.

## VII.   CLAIMS

### COUNT I

### (42 U.S.C. 1983 CLAIM FOR DAMAGES FOR VIOLATIONS OF THE FIFTH AMENDMENT OF THE U.S. CONSTITUTION)

70.     The allegations contained in paragraphs 1–69 are incorporated and repeated in this paragraph.

71.     By directing takings of private property without a public use, D.C. Code §§ 47-1330 to 47-1385 violate the Fifth Amendment of the United States Constitution.

72.     D.C. Code §§ 47-1330 to 47-1385 direct the District to conduct public auctions of "certificates of sale" pertaining to private properties subject to property tax

deficiencies.  Through these auctions, the District sells the certificates of sale to private purchasers.  Those certificates of sale then permit the purchasers to foreclose on the original property owners' homes and right of redemption and require the Superior Court upon foreclosure to vest title in fee simple in the purchasers.

73.    District of Columbia law therefore allows the District to take and sell to a purchaser of a tax certificate the right to foreclose upon private property, even if the original property owner owns equity in that property.  Regardless of how much equity a property owner invests in his or her property, or how minor the property tax obligation that the owner owes to the District, D.C. Code §§ 47-1330 to 47-1385 provide that the District will take and transfer the property and all the equity in it to another private purchaser.

74.    Equity in a home is undeniably a property right that may not be taken in violation of the Fifth Amendment of the Constitution.  Equity is a partial interest in real property and is subject to distribution like other forms of property. The government may not take a citizen's home equity in violation of the Constitution.

75.    D.C. Code §§ 47-1330 to 47-1385 therefore direct the taking and public transfer of private property to other private purchasers.

76.    Moreover, the District has no public purpose for selling the right to foreclose on private home equity when that equity is larger in amount than the tax liens, interest, penalties, expenses and attorney's fees at issue.  The Code provides ample means for recovering the amounts of these unpaid real estate taxes plus interest, penalties, expenses and attorney's fees.  Yet the provisions here also allow for the taking and transfer of amounts of equity that are above and beyond the amount of the public debt owed, thereby

eviscerating any relationship between the public purpose for these sales, namely the recovery of property tax deficiencies, and the final amounts transferred to the purchasers. The Constitution precludes such arbitrary exercises of government power.

77.    For the reasons stated, D.C. Code §§ 47-1330 to 47-1385 violate the Fifth Amendment of the United States Constitution.

78.    Plaintiff and the Damages Class have been damaged by the loss of their homes and the equity in their homes.

## COUNT II

## (CLAIM FOR JUST COMPENSATION UNDER THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION)

79.    The allegations contained in paragraphs 1–78 are incorporated and repeated in this paragraph.

80.    Plaintiff states his claim in Count II as an alternative claim to Count I.

81.    The Fifth Amendment provides, "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. This clause requires the government to provide just compensation for the taking of private property for a public use.

82.    D.C. Code §§ 47-1330 to 47-1385 permit a taking of private property, including the original owners' equity in the real property, without any form of compensation for that property.

83.    Such takings without compensation of any kind, even if they could be found to have a public purpose, violate the Fifth Amendment. By permitting such seizures without requiring any compensation, D.C. Code §§ 47-1330 to 47-1385 authorize an unconstitutional action.

84.    For the reasons stated, D.C. Code §§ 47-1330 to 47-1385 violate the "just compensation" requirement of the Fifth Amendment of the United States Constitution.

85.    The District of Columbia has taken the property of plaintiff and the Damages Class without paying just compensation.

86.    Plaintiff and the Damages Class have been damaged by the failure to pay just compensation for the loss of their homes.

## COUNT III

## (DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201)

87.    The allegations contained in paragraphs 1–86 are incorporated and repeated in this paragraph.

88.    An actual controversy exists between the plaintiff and defendant regarding the constitutionality and legal enforceability of D.C. Code §§ 47-1330 to 47-1385.

89.    Plaintiff and the Declaratory Relief Class are entitled to a declaration of their rights with regard to D.C. Code §§ 47-1330 to 47-1385.

90.    Plaintiff and the Declaratory Relief Class are entitled to a declaration that provisions of D.C. Code §§ 47-1330 to 47-1385 causing the sale of a home and all of its equity to a third party are null and void as a violation of the Fifth Amendment of the United States Constitution.

## X.    PRAYER FOR RELIEF

91.    WHEREFORE, Plaintiff requests that

a.    The Court determine that this action may be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and (3);

b.  The Court find and declare that defendant's taking and sale of plaintiff's home, including all equity in the home, was a violation of the Fifth Amendment of the United States Constitution;

c.  The Court declare relevant provisions of D.C. Code §§ 47-1330 to 47-1385 causing such sale to be null and void and as unconstitutional in violation of the Fifth Amendment of the United States Constitution;

d.  The Court award plaintiff and the Damages Class damages, including prejudgment interest, in an amount to be determined at trial;

e.  The Court declare in the alternative that plaintiff and the Damages Class are entitled to just compensation under the Fifth Amendment of the United States Constitution;

f.  The plaintiff and the plaintiff classes recover their costs of this suit, including reasonable attorney's fees, as provided by law; and

g.  The Court grant the plaintiff and the plaintiff class such relief as the nature of the case may require or as may be deemed just and proper by this Court.

### JURY DEMAND

Plaintiff demands a trial by jury, pursuant to Federal Rule of Civil Procedure 38(b), of all issues triable of right by a jury.

William A. Isaacson (DC 414788)
Attorney for Plaintiff
Boies, Schiller & Flexner, LLP
5301 Wisconsin Avenue, NW
Washington, DC 20015
(202) 237-2727