**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Benjamin Coleman | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | Civil Action No. 1:13-cv-01456-EGS |
| | ) | |
| The District of Columbia | ) | |
| | ) | |
| Defendant | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

William A. Isaacson (DC 414788)
Thomas W. Keenan
Attorneys for Plaintiff
Boies, Schiller & Flexner, LLP
5301 Wisconsin Avenue, NW
Washington, DC 20015
(202) 237-2727

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

SUMMARY OF ARGUMENT ............................................................................................ 1

BACKGROUND ................................................................................................................. 3

    A.   The Sale at Auction ................................................................................................ 4

    B.   The Right to Redeem ............................................................................................. 4

    C   Foreclosure of the Right of Redemption ............................................................. 5

ARGUMENT ....................................................................................................................... 9

    I   The Complaint States a Claim for Violation of the Fifth Amendment of the Constitution. ............ 9

       A.   District of Columbia Law Violated the Fifth Amendment by Authorizing the Taking of Mr. Coleman's Property Above the Amount of the Taxes Owed Without Just Compensation. ............... 10

       B.   District of Columbia Law Violates the Fifth Amendment by Authorizing a Taking and Transfer to a Private Party of Property Above the Taxes Owed. ..................... 13

       C.   The Tax Sale on the Excess Equity Was a Taking.................................... 14

       D.   The District Offers No Substantive Defense of the Statute. ....................... 15

    II.   This Court Has Subject Matter Jurisdiction over Mr. Coleman's Claim Against an Unconstitutional Statute........................................................................................ 18

       A.   Comity and the Tax Injunction Statutes Do Not Bar Mr. Coleman's Claims............ 18

       B.   Plaintiff's Claims Are Ripe for Review. ................................................. 21

    III.   The *Rooker-Feldman* Doctrine Does Not Bar Plaintiff's Claims. .......................... 28

    IV.   Res Judicata Does Not Bar Plaintiff's Claims. ...................................................... 31

CONCLUSION ................................................................................................................... 33

## <u>TABLE OF AUTHORITES</u>

**Cases**

*Agins v. Tiburon*, 447 U.S. 255 (1980) ................................................................. 23

*Arnett v. Myers*, 281 F.3d 552 (6th Cir. 2002) ..................................................... 27

*Arthur v. District of Columbia*, 857 A.2d 473 (D.C. App. 2004) ......................... 12

*Augustin v. Mughal*, 521 F.2d 1215 (8th Cir. 1975) ............................................ 32

*Balthazar v. Mari Ltd.*, 301 F. Supp. 103 (N.D. Ill. 1969) .................................. 16

*Bayvue Apartments Joint Venture v. Ocwen Fed. Bank FSB*, 971 F. Supp. 129 (D.D.C. 1997) .... 9

*\*Bell v. City of Boise*, 709 F.3d 890 (9th Cir. 2013) ............................................ 29

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 9

*Bishop v. Wood,* 426 U.S. 341 (1976) .................................................................. 10

*Blumberg v. Pinellas Cnty.*, 836 F. Supp. 839 (M.D. Fla. 1993) ......................... 11

*\*Calder v. Bull*, 3 U.S. (3 Dall.) 386 (1798) ................................................... 1, 13

*Calomiris v. Calomiris,* 3 A.3d 1186 (D.C. 2010) ............................................... 31

*\*Campbell v. City of Spencer*, 682 F.3d 1278 (10th Cir. 2012) ..................... 29, 30

*\*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687 (1999) ...... 26

*Clajon v. Prod. Corp. v. Petera*, 70 F.3d 1566, 1575 (10th Cir. 1995) ................ 27

*Coles v. Granville*, 448 F.3d 853 (6th Cir. 2006) ................................................ 27

*Corestates Bank. N.A. v. Huls Am., Inc.*, 176 F.3d 187 (3d Cir. 1999) ............... 32

*\*Corn v. City of Lauderdale Lakes*, 816 F.2d 1514 (11th Cir. 1987) ................... 24

*Deoma v. City of Shaker Heights*, 587 N.E.2d 425 (Ohio Ct. App. 1990) ........... 27

*\*Dist. Lock & Hardware, Inc. v. District of Columbia*, 808 F. Supp. 2d 36 (D.D.C. 2011) .. 19, 21

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) ........... 29

*Dixon v. Oisten*, No. Civ.A.02–CV–72379–DT, 2002 WL 31008840 (E.D. Mich. Aug. 20, 2002) ...................................................................................................................................... 21

*\*Dodd v. Hood River County*, 59 F. 3d 852, 859-61 (9th Cir. 1995) ..................................... 25, 27

*Elwell v. Elwell*, 947 A. 2d 1136 (D.C. 2008) ............................................................................ 31

*Exec. Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783 (6th Cir. 2004)........................... 32

*\*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) ............................... 28, 29

*Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100 (1981). ...................... 19, 21

*Front Royal & Warren Cnty. Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275 (4th Cir. 1998)............................................................................................................................... 25

*Gore v. Gore*, 632 A.2d 672 (D.C. 1994) ................................................................................. 10

*Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293 (1943) ........................................... 21

*Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229 (1984) ................................................................... 13

*Haywood v. Drown*, 556 U.S. 729 (2009).................................................................................. 26

*\*Hibbs v. Winn*, 542 U.S. 88  (2004) ................................................................................... 19, 20

*Hicks v. Miranda*, 422 U.S. 332 (1975)..................................................................................... 17

*\*Hoehne v. Cnty. of San Benito*, 870 F.2d 529 (9thCir. 1989) .................................................... 27

*Holliday v. Jones*, 264 Cal. Rptr. 448 (Cal. Ct. App. 1989) ....................................................... 10

*Ibrahim v. Unisys Corp.*, 582 F. Supp. 2d 41 (D.D.C. 2008) ....................................................... 9

*Armstrong v. United States*, 364 U.S. 40 (1960) .................................................................. 14, 15

*Johnson v. De Grandy*, 512 U.S. 997 (1994)............................................................................. 30

*Kelo v. City of New London*, 545 U.S. 469 (2005) ..................................................................... 13

*\*Kruse v. Vill. of Chagrin Falls*, 74 F.3d 694 (6th Cir. 1996).............................................. 26, 27

*\*Lance v. Dennis*, 546 U.S. 459 (2006).................................................................................... 30

*Lawton v. State of Ohio Supreme Court*, No. 2:13-cv-0748, 2013 WL 4008776 (S.D. Ohio Aug. 5, 2013)........................................................................................................................... 27

*Lewis v. Lewis,* 708 A.2d 249 (D.C. 1998) ................................................................ 10

*\*Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935) .................................... 12, 14

*Magritz v. Ozaukee Cnty.*, 894 F. Supp. 2d 34 (D.D.C. 2012) ................................................ 30, 31

*Maldonado v. Harris*, 370 F.3d 945 (9th Cir. 2004).......................................................... 30

*\*Mandel v. Bradley*, 432 U.S. 173 (1977). ........................................................................ 16

*McGlotten v. Connally*, 338 F. Supp. 448 (D.D.C. 1972) ....................................................... 20

*Miller v. District of Columbia*, No. 06-1935 (JDB), 2007 WL 1748890 (D.D.C. June 18, 2007) 21

*Mobil Oil Corp. v. Tully*, 639 F.2d 912 (2d Cir. 1981).......................................................... 20

*Nelson v. City of New York*, 352 U.S. 103 (1956) .......................................................... 12

*Nevada v. Hicks*, 533 U.S. 353 (2001)................................................................................ 26

*Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922)....................................................... 14

*Peterson v. Watt*, 666 F.2d 361 (9th Cir. 1982)................................................................. 32

*\*Phillips v. Wash. Legal Found.*, 524 U.S. 156 (1998) ..................................................... 11

*Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531 (D.C. 2011)................................. 23

*Reinmiller v. Marion Cnty.*, No. 05-1926-PK, 2006 WL 2987707 (D. Or. Oct. 16, 2006).......... 18

*Ritter v. Ross*, 558 N.W.2d 909 (Wis. Ct. App. 1996)........................................................ 18

*\*RX Data Corp. v. Dep't of Soc. Servs.*, 684 F.2d 192 (2d Cir. 1982)................................... 32

*Schulz v. Williamson*, 145 Fed. App'x 704 (2d Cir. 2005)................................................... 21

*Speed v. Mills*, 919 F. Supp. 2d 122 (D.D.C. 2013). ......................................................... 18

*Steen v. John Hancock Life Ins. Co.*, 106 F.3d 904 (9th Cir. 1997) ...................................... 32

*Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725 (1997) ............................................. 26

*Thompson v. Consol. Gas Corp.*, 300 U.S. 55 (1937) ......................................................... 13

*Turner v. Safley*, 482 U.S. 78 (1987) ................................................................................ 17

*United States v. Berman*, 884 F.2d 916 (6th Cir. 1989) ............................................................ 32

*United States v. Boyce*, 153 F. Supp.2d 1194 (S.D. Cal. 2001) ................................................. 21

*\*Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155 (1980) ..................................... 10

*\*Wells v. Malloy*, 510 F.2d 74 (2d Cir. 1975) ......................................................................... 20

*Williams v. Horvath*, 548 P.2d 1125 (Cal. 1976) ..................................................................... 26

*Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172
    (1985) .............................................................................................................................. 22

*Winters v. Mowery*, 836 F. Supp. 1419 (S.D. Ind. 1993) ......................................................... 11

*Yan Sui v. 2176 Pacific Homeowners Ass'n*, No. SACV 11-1340 JAK (AJW), 2012 WL 6632758
    (C.D. Cal. Aug. 30, 2012) ................................................................................................ 26

*\*Yee v. Escondido*, 503 U.S. 519, 22 (1992) ..................................................................... 14, 28

**Statutes**

D.C. Code  § 47-1330(2) ...................................................................................................... 3, 19

D.C. Code § 47-1330(7) ............................................................................................................ 5

D.C. Code § 47-1331(a) ............................................................................................................ 3

D.C. Code § 47-1332(a) ............................................................................................................ 4

D.C. Code § 47-1334 ................................................................................................................ 5

D.C. Code § 47-1341 ................................................................................................................ 4

D.C. Code § 47-1341(b)(2) ....................................................................................................... 4

D.C. Code § 47-1342 ................................................................................................................ 4

D.C. Code § 47-1342(b)(2)(C) .................................................................................................. 4

D.C. Code § 47-1343 ................................................................................................................ 4

D.C. Code § 47-1346(a)(2) ....................................................................................................... 4

D.C. Code § 47-1346(c) ............................................................................................................ 4

D.C. Code § 47-1347 ........................................................................................................... 4

D.C. Code § 47-1348 ........................................................................................................... 4

D.C. Code § 47-1350 ........................................................................................................... 4

D.C. Code § 47-1354(b) ...................................................................................................... 5

D.C. Code § 47-1355(a) ...................................................................................................... 9

D.C. Code § 47-1355(a)(1). ................................................................................................ 5

D.C. Code § 47-1360 ................................................................................................... 4, 5, 9

D.C. Code § 47-1361 ........................................................................................................... 5

D.C. Code § 47-1361(a). ..................................................................................................... 5

D.C. Code § 47-1361(d). ..................................................................................................... 5

D.C. Code § 47-1370 ........................................................................................................... 4

D.C. Code § 47-1370(a). .................................................................................................. 5, 9

D.C. Code § 47-1370(b). ............................................................................................. 1, 5, 9

D.C. Code § 47-1371(a). ..................................................................................................... 5

D.C. Code § 47-1371(b). ..................................................................................................... 5

D.C. Code § 47-1371(b)(1)(A) ........................................................................................... 4

D.C. Code § 47-1372 ........................................................................................................... 6

D.C. Code § 47-1372(d)(2). ............................................................................................... 6

D.C. Code § 47-1375 ........................................................................................................... 6

D.C. Code § 47-1377 ........................................................................................................... 5

D.C. Code § 47-3307 ......................................................................................................... 18

Federal Rule of Civil Procedure 12(b)(1) ......................................................................... 9

Federal Rule of Civil Procedure 12(b)(6) ......................................................................... 9

28 U.S.C. § 1331 .................................................................................................................. 24

28 U.S.C. § 1341 .................................................................................................................. 18

28 U.S.C. § 1738 .................................................................................................................. 30

42 U.S.C. § 1983 ……………………………………………………………………..23, 24

**Other Authorities**

13B Charles Alan Wright et al., Federal Practice and Procedure § 3532.1, at 411 n.43 (3d ed. 2008) .......................................................................................................................... 22

6 Charles Alan Wright et al., Federal Practice and Procedure § 1431, at 275-76 (3d ed. 2008) .. 32

Michael Sallah et al., *Left with Nothing*, Wash. Post, Sept. 8, 2013, *available at* http://www.washingtonpost.com/sf/investigative/2013/09/08/left-with-nothing/. ..................... 2

U.S. Const. amend. V .......................................................................................................... 13

Plaintiff Benjamin Coleman, by undersigned counsel, respectfully submits this
Opposition to Defendant the District of Columbia's Motion to Dismiss.

## SUMMARY OF ARGUMENT

This case arises out of the District of Columbia's unconstitutional taking and selling to
third parties of the property of its citizens who owe unpaid real property taxes -- a taking and
transfer of property to a private party grossly and arbitrarily greater in value than those taxes or
other lawfully owed amounts.  The unconstitutional District of Columbia law sells to a purchaser
at a property tax auction the real property of a delinquent tax payer and upon foreclosure
authorizes a court to vest title in fee simple in the purchaser. D.C. Code § 47-1370(b) (2013).  No
matter how much equity is in the property, and no matter how small the taxes owed, District of
Columbia law confiscates title to the property, and all equity in the property, from the
homeowner and transfers it to a private company that purchases the property at auction.

For example, if a homeowner fails to pay even a small property tax bill, and that person's
property is sold at auction, the purchaser from the auction will not only receive the unpaid taxes,
plus interest, penalties, expenses and attorney's fees upon foreclosure, but then will also receive
title to the home even if the home is worth much more than what is owed.  Neither the District
nor the purchaser is under any obligation to reimburse the homeowner the amount by which the
sale of the home exceeds what is owed.

The Fifth Amendment of the U.S. Constitution limits the power of the government to take
property by prohibiting a taking in the absence of a public purpose.  From the earliest years of
this nation's Constitution, it has been recognized that "It is against all reason and justice" to
presume that the legislature has been entrusted with the power to enact "a law that takes property
from A. and gives it to B." *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 388 (1798) (opinion of Chase,

1

J.).  The courts have recognized this guiding principle repeatedly as a core tenet of the Fifth Amendment and as a shield against the arbitrary abuse of government power at issue in this case.

Here, the Fifth Amendment protects citizens against the government confiscating property beyond a tax lien on the property and arbitrarily taking the remaining balance of equity in the property for itself after the taxes, interest and expenses are paid.  District of Columbia law, however, tramples on the Fifth Amendment even more than this type of arbitrary abuse of power. The District takes the property of homeowners and transfers title to that property not to itself, but to profit-seeking private parties.  Upon foreclosure, it is the private party who receives all equity in the property even after the tax lien, plus interest, penalties, expenses and attorney's fees, have been fully satisfied.

The victims of the abuse of government power at issue in this case are among our most vulnerable citizens.  It is low-income citizens who are often unable to pay real property taxes and who are preyed upon by purchasers in tax sales.  Citizens who not only fail to pay a property tax bill, but face foreclosure due to a limited tax bill -- despite equity in their homes  -- are ordinarily those who are incapable of managing their affairs and exercising legal rights.  Professor Christopher Leinberger of George Washington University has aptly described the District of Columbia law here as "destroying lives."  Michael Sallah et al., *Left with Nothing*, Wash. Post, Sept. 8, 2013, *available at* http://www.washingtonpost.com/sf/investigative/2013/09/08/left-with-nothing/.

The District relies in its motion on several doctrines that do not insulate the abuse of government power here from declaratory relief and an award of damages. The District incorrectly claims that principles of comity, as well as federal and District of Columbia tax injunction laws, protect it from liability, but these principles only apply where the requested

relief would prevent the collection of a tax. The constitutional violation here exists because the District has claimed the right to collect and sell unlimited property above the taxes or other lawful amounts owed.

The District also claims that Count II of the Complaint is not ripe where state law offers an inverse condemnation proceeding to award just compensation. But District of Columbia law does <u>not</u> offer such a procedure.

The District further claims that the *Rooker-Feldman* doctrine requires dismissal. Yet *Rooker-Feldman,* as the Supreme Court has recently made clear, applies only to parties who lose in state court and seek review in federal court of the state court judgment. Plaintiff here does not seek review of or relief from the Superior Court judgment foreclosing on his property. The prevailing party in that action -- the winning bidder at auction -- is not even a party to this action.

Finally, the District invokes res judicata based on the Superior Court judgment. Mr. Coleman and the District, however, were not adverse parties in the Superior Court action and therefore res judicata, as countless courts have explained, is inapplicable here.

## BACKGROUND

### Summary of the District of Columbia Tax Sale Statutory Scheme

The District's statutory scheme for real property tax sales directs the unconstitutional taking of private home equity above and beyond the amount of the public debt owed.

The District of Columbia statute on the sale of tax liens begins without controversy. On the date that a real property "tax" becomes due and remains unpaid in the District, that unpaid tax "automatically become[s] a lien on the real property." D.C. Code § 47-1331(a).  "Tax" is defined in the statute as the "unpaid real property tax . . . along with permitted penalties, interest, and costs." *Id.* § 47-1330(2).

District of Columbia law then directs the District to "sell all real property on which the tax is in arrears unless otherwise provided by law."  D.C. Code § 47-1332(a). The District is also directed to provide notice by mail of the tax in arrears and "unless all taxes in arrears and appearing in this Notice are paid . . . the Mayor will proceed to sell the above real property." *Id*. § 47-1341.

The statute also provides for notice by publication, the costs of which become fees that are included within the amounts owed.  D.C. Code § 47-1342.  Failure to provide notice will not "Invalidate or otherwise affect a sale" of the property or "Affect the title of a purchaser." *Id*. §§ 47-1341(b)(2); 47-1342(b)(2)(C).

## A.    The Sale at Auction

After the District has provided notice of the unpaid taxes, the District "shall" then sell the property "in its entirety" at public auction.  D.C. Code § 47-1343.  The sale is made to the highest bidder at a minimum amount of the taxes owed unless provided otherwise.  *Id.* § 47-1346(a)(2), (c).  At the conclusion of the auction, the District provides a certificate of sale to the purchaser, also known as a tax certificate, which includes a statement of the taxes owed at the time of the sale. *Id.* § 47-1348.

The purchaser of the certificate owns the certificate of sale, but does not yet become the title holder of the actual property.  D.C. Code §§ 47-1347, 47-1360, 47-1370, 47-1371(b)(1)(A). The purchaser of the certificate may record it with the Recorder of Deeds as an encumbrance on the property. *Id.* § 47-1350.

## B.    The Right to Redeem

Following the sale, the statute provides that the original owner of the property may redeem the property by paying the amount of the tax certificate and other charges.  First, the

original owner of the property (or any other person with an interest) may "redeem the real property at any time until the foreclosure of the right of redemption is final." D.C. Code § 47-1360. To redeem the real property, the original owner must pay the District the amount paid at auction including all taxes, penalties, and costs, plus the expenses of the purchaser. *Id.* §§ 47-1361(a), 47-1330(7). In addition to the taxes and penalties owed, redemption payments include interest for the period following the tax sale at the rate of 18% per year. *Id.* §§ 47-1334, 47-1361, 47-1377.

On redemption, the purchaser of the tax certificate is refunded the purchase price of the certificate (exclusive of the surplus over the taxes), plus 18% interest and expenses. D.C. Code § 47-1354(b), 47-1361(d).

The statute establishes a six-month waiting period for redemption during which the right of redemption may not be foreclosed. D.C. Code § 47-1370(a). If this right of redemption is not exercised within six months of the sale of the tax certificate, the purchaser may file a complaint with the Superior Court to foreclose the right of redemption. *Id.* A purchaser of the certificate of sale is required to bring an action to foreclose the right of redemption within one year from the date of the certificate; otherwise the certificate is void. *Id.* § 47-1355(a)(1).

### C.    Foreclosure of the Right of Redemption

After an action is brought in the District of Columbia Superior Court to foreclose the right of redemption, the Superior Court is authorized to bar the right of redemption and vest title in fee simple in the purchaser. D.C. Code § 47-1370(b). The statute states that the foreclosing party shall name as defendants in the case the record and legal title holder of the property; parties with encumbrances and mortgages on the property; and the District. *Id.* § 47-1371(a), (b).

5

Following filing of the lawsuit, the statute provides for written notice of the action. D.C. Code §§ 47-1372, 47-1375. The required notice states: "You have the right to pay the unpaid taxes, together with cost and expenses, and avoid lease termination and eviction." *Id.* § 47-1372(d)(2).

A final judgment in such a lawsuit is a "judgment foreclosing the right of redemption." D.C. Code § 47-1378. In ordering the foreclosure, the court bars any further right of redemption by the homeowner and directs the District "to execute and deliver a deed to the purchaser in fee simple" upon payment by the foreclosing party to the District of the amount necessary for redemption. *Id.* §§ 47-1370(b)(1), 47-1382(a), (c).

### Application of the Statutory Scheme to Mr. Coleman

Plaintiff Benjamin ("Bennie") Coleman is a 76-year-old Vietnam veteran and retiree, who owned a home at 221 44th Street NE in Washington, D.C. Compl. ¶ 26. Mr. Coleman has suffered from severe dementia for many years. *Id.* ¶ 27.

In 2006, Mr. Coleman neglected to pay a $133.88 property tax obligation. Compl. ¶ 28. Pursuant to the D.C. Code, defendant the District of Columbia thereafter placed a lien on Mr. Coleman's home for the unpaid taxes plus $183.47 in penalties on top of the tax obligation (a total of $317.35). *Id.* ¶ 29.

In July 2007, the District offered Mr. Coleman's home for sale in a public tax auction for $317.35. Compl. ¶ 30. The District sold Mr. Coleman's home at auction to Embassy Tax Services, LLC ("Embassy Tax Services"). *Id.* Embassy Tax Services purchased the property at auction for $16,317.35, consisting of $317.35 in taxes and penalties, plus a $16,000 surplus. Superior Court Compl. & Ex. A, attached as Ex. 1 to this Opp'n. Mr. Coleman's home had an

estimated value of $200,000, with no mortgage or other encumbrances other than the District tax lien. Compl. ¶ 46.

On February 28, 2008, Embassy Tax Services filed a complaint in the Superior Court of the District of Columbia Civil Division to foreclose on Mr. Coleman's home and right of redemption. Compl. ¶ 33; Ex. 1.  In addition to the lien amount of $317.35, Embassy Tax Services demanded $4,999 in interest and additional expenses from Mr. Coleman. Compl. ¶ 34; Ex. 1.  These expenses included court costs; attorney's fees; costs incurred for personal service of process and publication notice; and fees for the title search. Compl. ¶ 34.  The District was named by Plaintiff Embassy Tax Services as a statutory defendant in the foreclosure case, but the District did not file any specific claims or defenses.  *Id.* ¶ 35; Ex. 1.

On September 24, 2008, Mr. Coleman's son, Benjamin Coleman III, submitted a handwritten statement to the court stating that he had recently moved back into town and had discovered that his father was "living alone and had not kept to his medicine." Compl. ¶ 37.  Mr. Coleman III further requested a postponement of an October 1, 2008 scheduling conference and offered to "get most of the payments in on Oct. 3, 2008." *Id.*

Status hearings were rescheduled multiple times and the Superior Court eventually gave Mr. Coleman until May 27, 2009 to make full payment of the lien and the additional expenses demanded by Embassy Tax Services. Compl. ¶¶ 38-39.  Prior to the hearing, on May 26, 2009, Mr. Coleman III again submitted a handwritten statement to the court stating that his father had "been under the weather" and that his father had paid all of the owed taxes. *Id.* ¶ 40.  Mr. Coleman III stated that he hoped a resolution could be reached and offered for his father to make monthly payments of $850 beginning June 1, 2009 to pay the expenses claimed by Embassy Tax Services. *Id.*  Status hearings were again rescheduled. *Id.* ¶¶ 41-42.

On March 31, 2010, Embassy Tax Services filed a motion for default judgment and judgment on the pleadings against Mr. Coleman. Compl. ¶ 43.  On June 11, 2010, the court granted Embassy Tax Services' motion for default judgment and judgment on the pleadings. *Id.* ¶ 44.

As part of the default judgment, the court directed the District to execute and deliver a deed for the property to Embassy Tax Services. Compl. ¶ 44. On the same day, the court issued a separate judgment order extinguishing any title, rights, claims and interest that Mr. Coleman had in the property. *Id.* ¶ 45.  On August 31, 2010, the District executed and delivered a deed to the property to Embassy Tax Services. *Id.* ¶ 46.  Embassy Tax Services recorded this deed with the District on September 9, 2010. *Id.*

In order to evict Mr. Coleman from his home, Embassy Tax Services filed a petition for writ of possession with the Superior Court on December 16, 2010.  Compl. ¶ 47.  Additionally, Embassy Tax Services filed a complaint for possession in the Landlord and Tenant Branch on June 9, 2011.  *Id.* ¶ 48.  On June 22, 2011, a default judgment was issued in the Landlord and Tenant Branch case after Mr. Coleman failed to appear at a hearing on the Complaint.  *Id.* ¶ 49.

On August 5, 2011, armed U.S. Marshalls arrived at Mr. Coleman's home and ordered Mr. Coleman to leave. Compl. ¶ 50.

In October 2011, Embassy Tax Services sold Mr. Coleman's former home in a distress sale for $71,000. Compl. ¶ 51.

Mr. Coleman now lives in a group home, a mile from his former house, for which he pays rent. Compl. ¶ 52.

## ARGUMENT

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim." *Ibrahim v. Unisys Corp.*, 582 F. Supp. 2d 41, 44 (D.D.C. 2008). A complaint is sufficient if it "contains a short and plain statement of the claim showing that the pleader is entitled to relief enough to give the defendant fair notice of the claims against him." *Id.* (internal quotation marks omitted). "In determining the presence of subject matter jurisdiction on a motion to dismiss under F.R.C.P. 12(b)(1), the court may look to material outside the complaint." *Bayvue Apartments Joint Venture v. Ocwen Fed. Bank FSB*, 971 F. Supp. 129, 132 n.5 (D.D.C. 1997).

"For both a Rule 12(b)(1) and a Rule 12(b)(6) motion, the Court must treat the complaint's factual allegations -- including mixed questions of law and fact -- as true, drawing all reasonable inferences in the plaintiff's favor." *Ibrahim*, 582 F. Supp. 2d at 44; *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

I.     **The Complaint States a Claim for Violation of the Fifth Amendment of the Constitution.**

The District of Columbia provides for the auction of certificates of sale for real property with unpaid real property taxes. The taxpayer may redeem the certificate by paying the taxes, interest and fees until that right of redemption is foreclosed upon. D.C. Code § 47-1360. The statute requires a purchaser of the tax certificate of sale -- in not less than six months but not more than one year -- to initiate foreclosure proceedings, subject to the statute, on the homeowner's right to redeem the real property. *Id.* § 47-1355(a), 47-1370(a). After bringing the action, the statute provides for the Court to foreclose any further right to redeem the property and vest title in fee simple in the purchaser. *Id.* § 47-1370(b). At that point, regardless of how much equity is in the property, and no matter how small the owed taxes, the property and all equity in

9

the property is turned over to the purchaser of the tax certificate at the time of foreclosure.  In

this case, Plaintiff failed to pay $317.35 in taxes and penalties and lost all of the substantial

equity in his home.

      **A.**      **District of Columbia Law Violated the Fifth Amendment by Authorizing the Taking of Mr. Coleman's Property Above the Amount of the Taxes Owed Without Just Compensation.**

Through the statute described above, the District appropriated a $200,000 piece of

property and transferred it to a third party to pay off a tax debt of $317.35.  This is a classic

taking of private property.

To determine whether plaintiffs have a property interest for purposes of the Fifth

Amendment, the Supreme Court looks to state law.  *Bishop v. Wood,* 426 U.S. 341, 344 (1976)

("the sufficiency of the claim of entitlement must be determined by reference to state law").

There can be no serious dispute that home equity is property.  Home equity, for example, is

commonly used to secure home loans.  District of Columbia law also recognizes that home

equity is a property interest subject to distribution as marital property. *Lewis v. Lewis,* 708 A.2d

249 (D.C. 1998); *Gore v. Gore*, 632 A.2d 672 (D.C. 1994); *see also Holliday v. Jones*, 264 Cal.

Rptr. 448, 456 (Cal. Ct. App. 1989) ("plaintiff lost a property interest, i.e. equity in the home").

Nor can there be any dispute that the District took the property without paying just

compensation for it.  The fact that the District did so through a statute, rather than the power of

eminent domain, does not alter the fact that it was a taking.  In *Webb's Fabulous Pharmacies,*

*Inc. v. Beckwith,* 449 U.S. 155 (1980), the Supreme Court struck down as an unconstitutional

taking a Florida statute under which a county court took as its own $100,000 in interest accruing

on an interpleader fund deposited in the registry of the court. The Supreme Court found that

claimants of the interpleaded funds had a property interest in the accrued interest because the

10

principal sum deposited with the court was "private property" and interest should follow

principal.  The Supreme Court concluded that "Seminole County's taking unto itself . . . the

interest earned on the interpleader fund while it was in the registry of the court was a taking

violative of the Fifth and Fourteenth Amendments."  *Id.* at 164; *see Winters v. Mowery*, 836 F.

Supp. 1419 (S.D. Ind. 1993) (granting summary judgment as violation of the Takings Clause to

plaintiffs based on failure of court clerk to pay interest on maintenance and child support

payments paid through the court).

      The Court explained in *Webb's Fabulous Pharmacies* why the District of Columbia

statute here is unconstitutional: "To put it another way: a State, by *ipse dixit*, may not transform

private property into public property without compensation, even for the limited duration of the

deposit in court. This is the very kind of thing that the Taking Clause of the Fifth Amendment

was meant to prevent.  That Clause stands as a shield against the arbitrary use of governmental

power."  *Webb's Fabulous Pharmacies, Inc.*, 449 U.S. at 164; *see Phillips v. Wash. Legal

Found.*, 524 U.S. 156 (1998) (following *Webb's Fabulous Pharmacies* and holding that interest

income in IOLTA accounts is private property for purposes of the Fifth Amendment); *Blumberg

v. Pinellas Cnty.*, 836 F. Supp. 839 (M.D. Fla. 1993) (applying *Webb's Fabulous Pharmacies*

and finding unconstitutional taking of interest on deposits for utility services).

      Nor does the fact that the property was taken as a result of a tax sale alter its fundamental

character.  While there is no dispute that the District may foreclose on property to obtain

satisfaction of a tax lien together with necessary fees, expenses and interest, it has no authority to

take property over and above that amount.  This is why in upholding the constitutionality of the

State of New York's tax sale statute, the Supreme Court in *Nelson v. City of New York*, 352 U.S.

103 (1956), emphasized: "*we do not have here a statute which absolutely precludes an owner from obtaining the surplus proceeds of a judicial sale.*" *Id.* at 110 (emphasis added).

The Supreme Court in *Webb's Fabulous Pharmacies* rejected what effectively is the District's position here, that the government's right to a portion of a piece of property entitled it to the remainder of the property above and beyond the amount owed. *Webb's Fabulous Pharmacies, Inc.*, 449 U.S. at 162; *see also Phillips*, 524 U.S. at 171 ("the State does not, indeed cannot, argue that its confiscation of respondents' interest income amounts to a fee for services performed"); *Arthur v. District of Columbia*, 857 A.2d 473, 491 (D.C. App. 2004) ("Where there 'is a forced contribution to general governmental revenues, and it is not reasonably related to the costs of using the courts, an unconstitutional taking, which may require just compensation, has occurred") (quoting *Webb's Fabulous Pharmacies, Inc.*, 449 U.S. at 163).

The Supreme Court also has long recognized that the purpose for the taking of property is irrelevant to whether the government must pay just compensation for the taking under the Fifth Amendment. The Court in *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935), found that a provision of the Frazier-Lemke Act was unconstitutional because it prevented a mortgage holder from taking possession of certain farm property for five years (during which the mortgage holder would be paid rent). The "effect of the Act" was a "taking of substantive rights in specific property." *Id*. at 589-90.

The Court held that "The province of the Court is limited to deciding whether the Frazier-Lemke Act as applied has taken from the Bank without compensation, and given to Radford, rights in specific property which are of substantial value." *Radford*, 295 U.S. at 601. Because the statute did not provide for compensation, Justice Brandeis explained that any public purposes asserted for the statute were not to be considered in the constitutional analysis:

we must hold [the Act] void.  For the Fifth Amendment commands that, however
great the Nation's need, private property shall not be thus taken even for a wholly
public use without just compensation.  If the public interest requires, and permits,
the taking of property of individual mortgagees in order to relieve the necessities
of individual mortgagors, resort must be had to proceedings by eminent domain;
so that, through taxation, the burden of the relief afforded in the public interest
may be borne by the public.

*Id.* at 601-02.

Accordingly, while there is no dispute that the District may foreclose upon and sell

taxpayer property and retain the amount owed, it may not use that as an excuse to retain the

property that is *not* owed to the government.  When it does so, it has taken that property and

must pay just compensation for it and a statute that states otherwise is unconstitutional.

**B.**     **District of Columbia Law Violates the Fifth Amendment by Authorizing a
Taking and Transfer to a Private Party of Property Above the Taxes Owed**.

The Fifth Amendment of the U.S. Constitution states, "Nor shall private property be

taken for public use, without just compensation."  US Const. amend. V.   The "public use"

requirement of the Fifth Amendment limits the power of the government to take private property,

even with just compensation, by making such a taking entirely impermissible in the absence of a

public purpose.  As the Supreme court reiterated in *Kelo v. City of New London*, 545 U.S. 469

(2005), "the City would no doubt be forbidden from taking petitioners' land for the purpose of

conferring a private benefit on a particular private party."  *Id.* at 477; *see also Haw. Hous. Auth.

v. Midkiff*, 467 U.S. 229, 241 (1984) (the "Court's cases have repeatedly stated that 'one person's

property may not be taken for the benefit of another private person without a justifying public

purpose, even though compensation be paid'"); (quoting *Thompson v. Consol. Gas Corp.*, 300

U.S. 55, 80 (1937); *Calder,* 3 U.S. (3 Dall.) at 388 ("It is against all reason and justice" to

presume that the legislature has been entrusted with the power to enact "a law that takes property

from A. and gives it to B").  As alleged in the Complaint, the District's statute has not only transferred property from A to B without a legitimate public purpose.  It has subsidized the creation of a "booming business" for property tax liens built upon the backs of the District's most vulnerable property owners.  Compl. ¶ 1.

There is no conceivable valid public purpose to selling the right to foreclose upon home equity that is larger in amount than the tax liens plus fees, interest and expenses. The District of Columbia statute already provides for recoveries sufficient for the public purpose of collecting unpaid real estate taxes.  The conferral of arbitrary amounts above the taxes owed that bear no relation to the expenses incurred effectively confers a lottery ticket upon these companies for no legitimate public purpose.

### C.    The Tax Sale on the Excess Equity Was a Taking.

Pursuant to the District of Columbia tax statute, the District sold Mr. Coleman's entire property, including all equity, at auction.  In addition to the unconstitutional law here, this state action to sell and encumber Mr. Coleman's property over and above the taxes, penalties, expenses and interest owed, constituted an unconstitutional taking at the time of the sale.  When the government "authorizes a physical occupation of property (or actually takes title), the Takings Clause generally requires compensation." *Yee v. City of Escondido*, 503 U.S. 519, 522 (1992); *see Radford,* 295 U.S. at 601-02 (statute impairing rights of property owner is a taking); *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 414 (1922) (Holmes, J.) (statute permitting mining beneath private property constitutes a taking; "the extent of the taking is great. It purports to abolish what is recognized in Pennsylvania as an estate in land -- a very valuable estate").[1]

_____

[1] In *Armstrong v. United States*, 364 U.S. 40 (1960), the plaintiffs had supplied various materials to a shipbuilder who was working under contract to the U.S. government. When the shipbuilder defaulted, the government terminated the contract and took title to all uncompleted boats and

**D.      The District Offers No Substantive Defense of the Statute**.

As discussed, the District of Columbia took Mr. Coleman's surplus equity (*i.e.*, the equity above and beyond taxes, fees, interest and penalties owed), failed to provide just compensation for it, and transferred it to a third party for the third party's personal use.  Notably, the District makes no attempt to explain how what this statute does could be anything other than a taking.

Instead, the District avoids any substantive analysis of the issue by arguing that other courts have upheld such statutes.  However, its primary authority directly undermines its position.  In *Nelson*, the Supreme Court upheld the constitutionality of the New York state tax lien foreclosure statute.  In so ruling, the Court specifically stated: "we do not have here a statute which absolutely precludes an owner from obtaining the surplus proceeds of a judicial sale." *Nelson*, 352 U.S. at 110.  Instead, the statute allowed the owner of the property to contend as a defense that the property "had a value substantially exceeding the tax due." *Id.*  The New York courts had construed the New York statute "to mean that upon proof of this allegation a separate sale should be directed so that the owner might receive the surplus." *Id.*  By contrast, with the statute at issue here, there is no such option.  Instead, as the District concedes, "the District's tax sale statute allows for the retention of all the equity."  Def. Mem. at 20.

Further, the Court noted that the New York legislature had amended its statute to permit reconveyance of the property to the homeowner and that the appellant in *Nelson* had applied for reconveyance. *Nelson*, 352 U.S. at 110.  The Supreme Court thus upheld the New York statute based on the Court's express recognition that the New York statute lacked the constitutional vice that is indisputably present here. *Nelson* therefore supports Plaintiff's position, not the District's.  The District has no answer for this language, and so it ignores it.

---

materials. *Id.* at 41.  The Court held that the plaintiffs had a compensable property interest for purposes of the Fifth Amendment. *Id.* at 46-48.

Like the District, the court in *Balthazar v. Mari Ltd.*, 301 F. Supp. 103 (N.D. Ill. 1969), *aff'd,* 396 U.S. 114 (1969), placed primary reliance on *Nelson* without addressing the language discussed in the prior paragraph. *Id*. at 105.  Further, its sole analysis of the takings issue is limited to a conclusory sentence in a footnote that does not even mention the plaintiffs' property interest in the surplus equity, let alone explain how the seizure of that equity is not a taking. *Id*. at 105 n.6 ("Rather than taking private property for a public purpose, Illinois is here collecting taxes which are admittedly overdue").  As discussed above, the "collecting taxes" rationale can justify the seizure and sale of the property to pay taxes, but not the uncompensated confiscation (or transfer to a third party) of the equity above the taxes, fees and expenses due.

Nor does the Supreme Court's summary affirmance of *Balthazar* support the District's position.  As the District itself recognizes, summary actions by the Supreme Court "should not be understood as breaking new ground but as applying principles established by prior decisions to the particular facts involved."  *Mandel v. Bradley*, 432 U.S. 173, 176 (1977).  The Court should not assume that the Court silently determined the question that it specifically reserved in *Nelson*.

Further, summary affirmance is binding on lower courts only "on the precise issues presented and necessarily decided" by the Court.  *Mandel*, 432 U.S. at 176.  The plaintiffs in *Balthazar* did not seek damages from the state for the taking of their surplus equity, but rather sought injunctive relief against the private party who had purchased their property and the judicial officers responsible for enforcing the statute.[2]  The state or any public defendant that

---

[2] The statute that provided the basis for the Court's jurisdiction in *Balthazar*, Act of June 25, 1948, ch. 646, 62 Stat. 968 (codified at 28 U.S.C. § 2281) (repealed 1976), required consideration by a three-judge panel pursuant to 28 U.S.C. § 2284 of an application for "an interlocutory or permanent injunction restraining the enforcement, operation or execution of any

could have paid just compensation was not even a defendant in *Balthazar*. The Supreme Court thus "necessarily decided" only that relief that Plaintiff does not seek here (injunctive relief against the private purchaser and public officers based on the failure of the government to provide just compensation) was inappropriate under the facts of that case. To reach that conclusion, the Supreme Court need only have concluded that the ability to seek just compensation against the state would have redressed the constitutional injury without the need to enjoin the administration of the statute. Moreover, the plaintiffs in *Balthazar* did not make the one argument that even conceivably could have justified injunctive relief -- namely that the taking was not for a public use but rather for the benefit of a private party.

A summary affirmance also is binding only to the extent that it has not been undermined by subsequent "doctrinal developments" in the Supreme Court's jurisprudence. *Hicks v. Miranda*, 422 U.S. 332, 344-45 (1975) (internal quotation marks omitted); *see also Turner v. Safley*, 482 U.S. 78, 96 (1987). The District's understanding cannot be reconciled with the Supreme Court's subsequent decisions in *Webb's Fabulous Pharmacies* and *Washington Legal Foundation*. As discussed above, those cases make clear that the District may not transform private property into public property by formalistic labels. To the contrary, *Webb's Fabulous Pharmacies* recognized that even where interest monies were generated while the property was properly held by the state court, and even where a portion of the property could be deducted to pay legitimate state expenses, the state could not retain the interest above and beyond the amount of the state's fee. Similarly, the District may not retain or transfer to a third party the surplus equity above the amount properly owed to the District for taxes, fees, penalties and interest.

---

State statute by restraining the action of any officer of such State in the enforcement or execution of such statute" based on "the unconstitutionality of such statute."

17

The remaining cases cited by the District similarly provide no support for its position. The only case from this jurisdiction did not involve a challenge to the retention of surplus equity. *Speed v. Mills*, 919 F. Supp. 2d 122, 129 (D.D.C. 2013).  Two other cases (including one unpublished opinion) did involve such a sale, but both rely on *Nelson* without addressing the critical language discussed above.  *See Reinmiller v. Marion County*, No. 05-1926-PK, 2006 WL 2987707 (D. Or. Oct. 16, 2006); *Ritter v. Ross*, 558 N.W.2d 909 (Wis. Ct. App. 1996).  *Ritter* also inexplicably concluded that the plaintiff had no property interest in the surplus proceeds of a judicial sale.  As discussed above, under District law, a property owner's equity is unquestionably a cognizable property interest.  Moreover, both fail otherwise to explain how the retention of or transfer of proceeds well in excess of those taxes can be reconciled with the Takings Clause.  *See Calder*, 3 U.S. (3 Dall.) at 388.

In sum, the District has failed to provide any credible defense of its position.

**II.    This Court Has Subject Matter Jurisdiction over Mr. Coleman's Claim Against an Unconstitutional Statute.**

**A.    Comity and the Tax Injunction Statutes Do Not Bar Mr. Coleman's Claims.**

The District argues that the Federal Tax Injunction Act, D.C. Tax Injunction Act, and/or the principle of comity foreclose the Court from considering Mr. Coleman's claim.  Def. Mem. at 6-9.  The Federal Tax Injunction Act ("FTIA") provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341 (2013).  The D.C. Tax Injunction Act similarly provides that no "suit shall be filed to enjoin the assessment or collection by the District of Columbia or any of its officers, agents, or employees of any tax."  D.C. Code § 47-3307.  While both statutes by their terms do not prohibit actions for damages, *Dist. Lock & Hardware, Inc. v. District of Columbia*, 808 F. Supp. 2d 36, 39 & n.2

(D.D.C. 2011), the Supreme Court held in a later case that principles of comity barred taxpayers

from bringing § 1983 damages claims against state officials to challenge a method the state used

for assessing the market value of improvements for calculating property taxes and the standards

the state used for reassessments. *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S.

100, 106 (1981).

      Neither these statutes nor the principle of comity bar this Court's consideration of Mr.

Coleman's claim because, as discussed above, Mr. Coleman does not challenge the District's

collection or assessment of taxes.  More specifically, he does not challenge the District's right to

collect the tax owed; the amount of the tax, interest, expenses or penalties owed; or the right of

the District's taxing authorities to foreclose on his property to recover that debt.  Instead, Mr.

Coleman challenges only the taking of property that was indisputably *not* owed for taxes -- *i.e.*,

the amount in excess of the tax owed.  The District's tax statute makes clear that such property is

not a "tax."  D.C. Code  § 47-1330(2) (defining "Tax" as the "unpaid real property tax . . . along

with permitted penalties, interest, and costs").  Challenges to the taking of such property thus do

not fall within the ambit of the Tax Injunction Act or the principle of comity on which the

District relies.  *See Hibbs v. Winn*, 542 U.S. 88, 107 n.9 (2004) (statute applies "only when

plaintiffs have sought district-court aid in order to arrest or countermand state tax collection").

      Various courts have made clear that the FTIA does not does not bar an action "merely

because it pertains to state tax administration in the most general sense."  *Dist. Lock &*

*Hardware, Inc.*, 808 F. Supp. 2d at 41 (alterations omitted) (internal quotation marks omitted).

In *Hibbs v. Winn*, 542 U.S. 88 (2004), for example, state taxpayers filed a lawsuit seeking to

enjoin as a violation of the Establishment Clause of the First Amendment a state statute that

provided tax credits for nonprofit organizations that provided scholarships to private schools.

The Supreme Court held that the FTIA did not bar the suit because it was not intended to enable taxpayers to avoid paying state taxes: "In sum, this Court has interpreted and applied the TIA only in cases Congress wrote the Act to address, *i.e.*, cases in which state taxpayers seek federal-court orders enabling them to avoid paying state taxes." *Id.* at 107. The Court in *Hibbs* also cited a long history of federal court decisions reaching the merits of third-party constitutional challenges to tax statutes. *Id.* at 110.

Other courts have reached similar conclusions. In *Wells v. Malloy*, 510 F.2d 74, 76 (2d Cir. 1975) (Friendly, J.), the Second Circuit Court of Appeals held that the Tax Injunction Act did not bar the plaintiff's challenge to the suspension of his driver's license for nonpayment of taxes. *Id.* at 77. The court properly recognized that the challenge in *Malloy* was not to the tax owed, but instead as here, to the additional sanction imposed *in addition to the tax owed*. *Id.* The court recognized in that case that "Clearly plaintiff Wells is not seeking to restrain the 'assessment' or 'levy' of a tax under state law." *Id.* The Supreme Court later cited Judge Friendly's opinion approvingly in *Hibbs*. *Hibbs*, 542 U.S. at 109; *see also Mobil Oil Corp. v. Tully*, 639 F.2d 912, 918 (2d Cir. 1981) (addressing a statute prohibiting the pass-through of a gross receipts tax and holding that the statute was not insulated from scrutiny by the Tax Injunction Act because the "mere fact that the anti-passthrough section is contained in a tax law of the State should not lead to automatic sanctuary under Section 1341"); *McGlotten v. Connally*, 338 F. Supp. 448, 453-54 (D.D.C. 1972) (anti-injunction act does not bar action seeking to enjoin income-tax exemptions to fraternal orders that exclude nonwhites because plaintiff "does not contest the amount of his own tax, nor does he seek to limit the amount of tax revenue collectible by the United States").

20

By contrast, the cases relied on by the District uniformly involve the effort of the plaintiff to challenge the collection of a tax.  For example, the Supreme Court's decision in *Fair Assessment in Real Estate Association, Inc.* addressed a challenge to Missouri's methods for assessing state property taxes.  *Fair Assessment in Real Estate Ass'n, Inc.*, 454 U.S. at 106; *see also Dist. Lock & Hardware, Inc.*, 808 F. Supp. 2d at 38 (plaintiff disputed "the adequacy of defendants' notification, the amount of their purported tax liability, and irregularities in the negotiation and the tax sale processes"); *Miller v. District of Columbia*, No. 06-1935 (JDB), 2007 WL 1748890, at *1 (D.D.C. June 18, 2007) (plaintiff sought "to set aside defendant District of Columbia's . . . sale of two of his properties at a tax auction and to recover damages for the District's allegedly unlawful possession of two others").[3]  These cases do not, and cannot, support the proposition that the government may sell all of a taxpayer's equity at auction, regardless of the amount of tax owed, to a third party.  If they did, any statute labeled a "tax" statute could authorize the confiscation of unlimited taxpayer property or the violation of any constitutional liberties of a taxpayer.  The TIA and comity thus provide no basis for dismissing Mr. Coleman's claims.

### B.    Plaintiff's Claims Are Ripe for Review.

The District does not dispute the ripeness of Count I of the Complaint seeking damages or Count III seeking declaratory relief.  Instead, the District argues that Count II of the

---

[3] *See also Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293 (1943) (declaratory relief denied in a challenge to a tax imposed requiring a contribution to a state unemployment insurance fund); *Schulz v. Williamson*, 145 Fed. App'x 704 (2d Cir. 2005) (unpublished opinion affirming dismissal of pro se complaint seeking to enjoin foreclosure or adding a taxpayer to a list of delinquent taxpayers); *Wright v. Pappas*, 256 F.3d 635 (7th Cir. 2001) (challenge to alleged misrepresentation of property values for tax assessment purposes based on race); *Dixon v. Oisten*, No. Civ.A.02–CV–72379–DT, 2002 WL 31008840 (E.D. Mich. Aug. 20, 2002) (unpublished opinion dismissing pro se complaint by prisoner challenging tax sales during his incarceration); *United States v. Boyce*, 153 F. Supp. 2d 1194 (S.D. Cal. 2001) (FTIA bars injunction claim challenging tax assessments and tax liens).

Complaint seeking just compensation under the Fifth Amendment is unripe under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985). Def. Mem. at 9. In *Williamson County*, the Supreme Court held that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson Cnty. Reg'l Planning Comm'n*, 473 U.S. at 195. It therefore found that the plaintiff's claim was unripe because the property owner had not first sought and been denied just compensation under Tennessee's inverse condemnation statute. *Id*. at 196-97.

The District's argument is wrong because *Williamson County* only requires Mr. Coleman to utilize available *state* law prior to bringing a federal takings claim in federal court. *See* 13B Charles Alan Wright et al., Federal Practice and Procedure § 3532.1, at 411 n.43 (3d ed. 2008) ("The requirement that state remedies be invoked before a federal taking claim is ripe requires resort only to remedies under state substantive law. A federal takings claim need not be presented to state courts as a matter of ripeness doctrine"). There is no District of Columbia inverse condemnation law or other statute similar to Tennessee's inverse condemnation statute. As described above, far from providing for Mr. Coleman's ability to seek just compensation, the District statute at issue here expressly authorized such a taking and precluded his ability to seek compensation for it. There also is no other District of Columbia law that would somehow have enabled Mr. Coleman to seek compensation for the taking of his equity.

The District fails to identify any District of Columbia statute under which Mr. Coleman could have sought just compensation. Moreover, elsewhere in its brief, the District acknowledges that the "District has no state constitution and the District's tax sale statute allows for the retention of all the equity." Def. Mem. at 20.

Rather than identify any state law under which Mr. Coleman could have sought redress, it notably cites only a single inapposite D.C. Court of Appeals decision that involved a *federal* takings claim brought pursuant to 42 U.S.C. § 1983.  *Id.* at 9 (citing *Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 550 (D.C. 2011)).  That decision applied *federal* constitutional law, not District of Columbia law, and specifically rejected the argument that District law provided for a greater remedy.  *Potomac Dev. Corp.*, 28 A.3d at 550 ("District law is not the basis of the cause of action pled in the complaint, which invokes only § 1983, and § 1983, by its explicit terms, creates a cause of action only for a deprivation of rights secured by the U.S. Constitution.  Even if the complaint pled a cause of action under D.C. law, the result would be the same because no D.C. statute provides a broader remedy than the Just Compensation Clause affords"); *see also id.* (recognizing that "earlier inverse condemnation cases applied *Fifth Amendment principles* in deciding whether a taking has occurred and what compensation is just") (emphasis added).

*Potomac Development Corp.* discussed the term "inverse condemnation" as "a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted."  *Potomac Dev. Corp.*, 28 A.3d at 550 (quoting *Agins v. City of Tiburon*, 447 U.S. 255, 258 n.2 (1980)).  The *Agins* decision that the D.C. Court of Appeals quoted is a Supreme Court takings decision under federal law.  The use of the term "inverse condemnation" thus did not establish the existence of a state law claim for inverse condemnation.

Plaintiff's claim is therefore ripe because District of Columbia law does not provide for or establish an inverse condemnation right or procedure.  The District fails to point to even a single instance of such a proceeding.  *See Arnett v. Myers*, 281 F.3d 552, 564 (6th Cir. 2002)

("This court's review of Tennessee law has revealed no reasonable, certain, and adequate provision for obtaining just compensation that was available to the Arnetts at the time of the alleged takings in this case"); *Clajon v. Prod. Corp. v. Petera*, 70 F.3d 1566, 1575 (10th Cir. 1995) (finding a federal takings claim to be ripe for review because the Commission that effected the taking was not subject to Wyoming's inverse condemnation procedure).

At the same time, there is no support for the extraordinary proposition that a plaintiff must bring a federal takings claim in state court before bringing it in federal court. To the contrary, under 28 U.S.C. § 1331, federal district courts have original jurisdiction "of *all* civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (emphasis added). There is no exception for lawsuits brought under the Fifth Amendment or 42 U.S.C. § 1983. The District fails to cite a single case requiring a plaintiff to bring a federal takings claim (or any federal claim) in state court before bringing it in federal court.

Moreover, courts have specifically held that *Williamson County* does not require plaintiffs to bring federal takings claims in state court. Those courts properly recognize that *Williamson County* only requires plaintiffs to avail themselves of remedies that state law affords before proceeding to federal court. For example, in addressing the ripeness of a takings claim, the Eleventh Circuit Court of Appeals recognized that even though "under Florida law, a litigant may sue in state court for violation of 42 U.S.C. § 1983," the "availability of a state forum for vindication of a federal statutory right is ***obviously*** not within the contemplation of the Supreme Court's ruling in *Williamson County*." *Corn v. City of Lauderdale Lakes*, 816 F.2d 1514, 1520 n.9 (11th Cir. 1987) (emphasis added); *see also Front Royal & Warren Cnty. Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275, 283 (4th Cir. 1998) ("Nevertheless, *Williamson County* does not require that the *federal* takings claim actually be litigated in state court").

24

Similarly, in *Dodd v. Hood River County*, 59 F. 3d 852, 859-61 (9th Cir. 1995), the Ninth

Circuit Court of Appeals rejected Oregon's argument that the plaintiffs "must pursue a Fifth

Amendment action in state court in order to ripen their claim."  In rejecting that argument, the

Ninth Circuit observed that the Supreme Court in *Williamson County* focused exclusively on

Tennessee law and "made no reference to the pursuit of the Fifth Amendment claim in state

court."  *Id*. at 859.  The court further recognized that the position advocated in that case by

Oregon and in this case by the District would effectively confer exclusive *state* court jurisdiction

over a *federal* constitutional claim.  *Id*. at 860-61 ("to hold that a taking plaintiff must first

present a Fifth Amendment claim to the state court system as a condition precedent to seeking

relief in a federal court would be to deny a federal forum to every takings claimant.  We are

satisfied that *Williamson County* may not be interpreted to command such a revolutionary

concept and draconian result").

Further, various courts, including the Supreme Court, have reached conclusions that

would make no sense if *Williamson County* required takings plaintiffs to bring federal takings

claims in state court.  For example, in *Williamson County* itself, the Supreme Court would not

have confined its analysis to the availability or adequacy of the state inverse condemnation

procedure if the ability to bring a federal cause of action in state court were all that was

necessary to bar the claim.  *See* 473 U.S. at 196-97.

Similarly, in *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687

(1999), the Court held that the plaintiff "was entitled to proceed in federal court under § 1983

because, at the time of the city's actions, the State of California did not provide a compensatory

remedy for temporary regulatory takings."  *Id*. at 710.  California courts indisputably have

concurrent jurisdiction over § 1983 lawsuits (as does any state court of general jurisdiction).[4]

*City of Monterey* thus further confirms that the mere availability of a state forum for a § 1983 lawsuit does not bar a plaintiff's ability to bring a federal takings claim in federal court.  *See also Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 734 n.8 (1997) ("Ordinarily, a plaintiff must seek compensation through *state* inverse condemnation proceedings before initiating a taking suit in federal court, unless the State does not provide adequate remedies for obtaining compensation") (emphasis added).

Other federal courts have found federal takings claims brought in federal court to be ripe based on the absence of an adequate state cause of action, even though the plaintiff indisputably could have brought the federal claim in state court.  For example, the Sixth Circuit Court of Appeals held in *Kruse v. Village of Chagrin Falls* that a federal takings claim was ripe because "unlike Tennessee and a number of other states which have explicit statutory procedures governing inverse condemnation to compensate landowners whose property has been taken in violation of the Constitution and the state's eminent-domain statutes, *Ohio does not have such a*

---

[4] *See Yan Sui v. 2176 Pacific Homeowners Ass'n*, No. SACV 11-1340 JAK (AJW), 2012 WL 6632758, at *6 (C.D. Cal. Aug. 30, 2012) ("California courts of general jurisdiction have concurrent authority to adjudicate federally created causes of action, including claims arising under section 1981 and section 1983") (internal quotation marks omitted); *Williams v. Horvath*, 548 P.2d 1125, 1127 (Cal. 1976) ("With regard to the authority of the superior court to entertain an action brought under section 1983, it is now clear that absent an exclusive grant of jurisdiction to the federal courts in the congressional act, state courts of general jurisdiction have concurrent authority to adjudicate federally created causes of action"); *see also Haywood v. Drown*, 556 U.S. 729, 750 (2009) ("In particular, the Court has held that the Federal Constitution prohibits state courts of general jurisdiction from refusing to entertain a federal claim solely because the suit is brought under a federal law as a state may not discriminate against rights arising under federal laws") (internal quotation marks omitted); *Nevada v. Hicks*, 533 U.S. 353, 366 (2001) ("It is certainly true that state courts of 'general jurisdiction' can adjudicate cases invoking federal statutes, such as § 1983, absent congressional specification to the contrary") (internal quotation marks omitted).

statute." *Kruse v. Vill. of Chagrin Falls*, 74 F.3d 694, 698 (6th Cir. 1996), *overruled on other grounds by Coles v. Granville*, 448 F.3d 853, 865 (6th Cir. 2006). If the ability to bring a § 1983 claim in Ohio courts were sufficient to bar the claim, the absence of an Ohio statute would have been irrelevant, and the Sixth Circuit would have had no basis for finding the claim to be ripe.[5]

Similarly, the Ninth Circuit held in *Hoehne v. County of San Benito*, 870 F. 2d 529 (9th Cir. 1989), that because at the time of the challenged taking California law did not recognize a state inverse condemnation action for regulatory takings, "the district court erred in ruling that the Hoehnes were required to pursue state compensation procedures before filing for federal court review." *Id* at 534. Again, the inadequacy of state substantive law would not have been a basis for finding the claim ripe if the ability to bring a federal cause of action were sufficient. *See also Arnett v. Myers*, 281 F.3d 552, 564 (6th Cir. 2002) ("This court's review of Tennessee law has revealed no reasonable, certain, and adequate provision for obtaining just compensation that was available to the Arnetts at the time of the alleged takings in this case"); *Clajon v. Prod. Corp. v. Petera*, 70 F.3d 1566, 1575 (10th Cir. 1995) (finding a federal takings claim to be ripe for review because the Commission that effected the taking was not subject to Wyoming's inverse condemnation procedure); *Dodd*, 59 F.3d at 859 ("on countless occasions we have assessed the ripeness of a federal taking claim without mentioning the need to pursue a federal

---

[5] "Ohio courts of general jurisdiction have the same duty as federal courts to adjudicate constitutional claims presented to them." *Lawton v. State of Ohio Supreme Court*, No. 2:13-cv-0748, 2013 WL 4008776, at *1 (S.D. Ohio Aug. 5, 2013); *see also Deoma v. City of Shaker Heights*, 587 N.E.2d 425, 430 (Ohio Ct. App. 1990) ("Appellants' claims under Section 1983 fall within the jurisdiction of the court of common pleas because that court is one of original and general jurisdiction (Section 4, Article IV, Ohio Constitution; R.C. 2305.01) and because Congress allowed suits under Section 1983 to be brought in state courts as well as in federal courts").

taking action in state court; instead, we have looked exclusively to -- and instructed litigants to pursue remedies under -- state substantive law").[6]

Finally, the Supreme Court held in *Yee v. City of Escondido* that even where (unlike here) state substantive law provides a basis for an as-applied takings claim under state law, *Williamson County* did not bar a *facial* challenge to California's mobile home statute as effecting a taking without just compensation. *Yee*, 503 U.S. at 533-34. Here, Mr. Coleman has brought a facial challenge to the portion of the District's statute that authorizes the taking of homeowner equity without compensation regardless of the amount owed to the District in taxes and fees.

### III.    The *Rooker-Feldman* Doctrine Does Not Bar Plaintiff's Claims.

In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Supreme Court confined the *Rooker-Feldman* doctrine so as to deny jurisdiction in federal court to a plaintiff only if the plaintiff was seeking review and rejection of a state court judgment. The *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.

Even prior to *Exxon Mobil*, *Rooker-Feldman* permitted jurisdiction in federal court over a challenge to the constitutionality of a rule or statute of a state court following a state court judgment applying that rule or statute. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482, 485-86 (1983) ("Challenges to the constitutionality of state bar rules, therefore, do not necessarily require a United States district court to review a final state-court judgment"); *see*

---

*Exxon Mobil*, 544 U.S. at 286 ("the Court [in *Feldman*] said, plaintiffs could maintain 'claims that the [bar admission] rule is unconstitutional'") (quoting *Feldman*, 460 U.S. at 487).

      Mr. Coleman does not seek review or rejection in this case of the Superior Court judgment entered in favor of Embassy Tax Services and against him.  Plaintiff does not contend that the Superior Court committed error and does not seek relief from its judgment.  Embassy Tax Services, in whose name judgment was entered, is not even a party to this action.  Mr. Coleman seeks damages and declaratory relief due to the District's unconstitutional statute and taking.

      The Ninth Circuit decision in *Bell v. City of Boise*, 709 F.3d 890 (9th Cir. 2013), reversed a dismissal based on *Rooker-Feldman* of a challenge to enforcement of a local ordinance that was enforced in a state court judgment.  Noting the confined approach to *Rooker-Feldman* in *Exxon Mobil*, the court held that the plaintiff was entitled to challenge the constitutionality of enforcement of the ordinances at issue:

> The court erred by dismissing Plaintiffs' claims for retrospective relief under the *Rooker-Feldman* doctrine.  Although Plaintiffs sought relief designed to remedy injuries suffered from a state court judgment, they did not allege before the court that the state court committed legal error, nor did they seek relief from the state court judgment itself.  Rather, Plaintiffs assert "as a legal wrong an allegedly illegal act . . . by an adverse party" -- the City's allegedly unconstitutional enforcement of the Ordinances.  Without a direct challenge to a state court's factual or legal conclusion, Plaintiffs' suit is not a forbidden de facto appeal, and *Rooker-Feldman* is inapplicable.

*Id.* at 897 (citations omitted); *accord Campbell v. City of Spencer*, 682 F.3d 1278 (10th Cir. 2012) (*Rooker-Feldman* bars attack on state court judgment, but does not bar federal suit alleging an unconstitutional search and seizure by a sheriff of the plaintiff's horses that preceded a state court judgment); *Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004) ("Maldonado

does not allege any legal errors by the California state court as a basis for relief, and *Rooker-Feldman* therefore does not bar his federal action").

Moreover, in this case, Plaintiff's action <u>cannot</u> overturn the judgment of the Superior Court because the party in whose name judgment was entered, Embassy Tax Services, is not a defendant in this action.  *See Lance v. Dennis*, 546 U.S. 459 (2006) (*Rooker-Feldman* inapplicable to plaintiff who was not a party to state court judgment below); *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994) (same).

The District argues that Mr. Coleman's claim may be barred even if it is "inextricably intertwined" with a state court decision, relying on outdated cases that predate the Supreme Court decision in *Exxon Mobil*.  Def. Mem. at 10-11 and cases cited therein.  The Supreme Court has confirmed that "Our cases since *Feldman* have tended to emphasize the narrowness of the *Rooker-Feldman* rule." *Lance*, 546 U.S. at 464 (citing *Exxon Mobil*, 544 U.S. at 292 ).  The Tenth Circuit explained the District's error in *Campbell v. City of Spencer* and how the Supreme Court in *Exxon Mobil* was now "eschewing the inextricably-intertwined language":

> The Supreme Court has reformulated the *Rooker-Feldman* doctrine, apparently out of concern that the doctrine "ha[d] sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738."

*Campbell*, 682 F.3d at 1283 (quoting *Exxon Mobil Corp*., 544 U.S. at 283).

The District also relies on this Court's decision in *Magritz v. Ozaukee County*, 894 F. Supp. 2d 34 (D.D.C. 2012).  In that case, unlike here, the plaintiff sued the parties to a state court foreclosure action alleging violations of his rights during the state court procedures.  The complaint in that action, unlike this one, sought to recover the property sold through foreclosure

from the parties who foreclosed upon the property. *Id.* at 37-39. Furthermore, each of the plaintiff's causes of action in that case "question[ed] the validity of the underlying [judgment of foreclosure]." *Id.* at 39. The plaintiff in *Magritz* even "conceded the issue of subject matter jurisdiction." *Id.* at 39 n.3. Plaintiff in this case does not seek to recover his home or to question the validity of the Superior Court judgment.

## IV.    Res Judicata Does Not Bar Plaintiff's Claims.

The District finally incorrectly invokes res judicata with respect to the judgment in favor of Embassy Tax Services as a defense to this action between Mr. Coleman and the District. The requirements for application of res judicata include: "(1) whether the claim was adjudicated finally in the first action; (2) whether the present claim is the same as the claim which was raised or which might have been raised in the prior proceeding; and (3) whether the party against whom the plea is asserted was a party or in privity with a party in the prior case." *Calomiris v. Calomiris,* 3 A.3d 1186, 1190 (D.C. 2010) (quoting *Elwell v. Elwell*, 947 A. 2d 1136, 1140 (D.C. 2008)).

Mr. Coleman and the District were codefendants in the Superior Court proceedings. The codefendants did not litigate any issues between them. The District was a nominal defendant and for that matter did not litigate any issue. No judgment was entered between Mr. Coleman and the District. Either defendant pursuant to Superior Court Rule 13(g) had the right to state a cross-claim against the other arising out of the transaction or occurrence that was the subject matter of the Superior Court suit. But the District of Columbia Rules of Civil Procedure, like the Federal Rules, have no provision making any cross-claims <u>compulsory</u>.

The Superior Court judgment from which the District claims res judicata was entered in favor of plaintiff Embassy Tax Services and against defendants Bennie Coleman and nominal

31

defendant the District.  Res judicata therefore does not apply because Mr. Coleman and the District were not adverse parties in the Superior Court.  The District admits, but does not acknowledge, this point by noting that "A 'claim' or 'cause of action' for purposes of *res judicata*, comprises all rights of the *plaintiff* to remedies against the *defendant*." Def. Mem. at 15. (emphasis added) (internal quotation marks omitted).

The case law is uniform on the point that res judicata does not apply where parties were codefendants in an earlier action.  "[A] party in a civil action is not precluded from litigating a claim simply because it had an opportunity to raise the claim as a cross-claim in a prior suit to which it was a party." *Corestates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 199 (3d Cir. 1999). "[W]here the co-defendants did not actively litigate as adversaries, there can be no *res judicata* effect." *RX Data Corp. v. Dep't of Soc. Servs.*, 684 F.2d 192, 196 (2d Cir. 1982); *accord Exec. Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783 (6th Cir. 2004) ("Generally, codefendants are not adversaries for purposes of res judicata, even though a defendant could have filed a cross-claim against another defendant") (internal quotation marks omitted); *Steen v. John Hancock Life Ins. Co.*, 106 F.3d 904, 911 (9th Cir. 1997); *United States v. Berman*, 884 F.2d 916, 923 n.9 (6th Cir. 1989); *Peterson v. Watt*, 666 F.2d 361, 363 (9th Cir. 1982); *Augustin v. Mughal*, 521 F.2d 1215 (8th Cir. 1975); *see* 6 Charles Alan Wright et al., Federal Practice and Procedure § 1431, at 275-76 (3d ed. 2008) ("A party who decides not to bring a [cross] claim under Rule 13(g) will not be barred by res judicata").

Additionally, Mr. Coleman's claim challenging the constitutionality of the District of Columbia tax statute and seeking damages for violations of the Constitution was not adjudicated in the Superior Court.  His claim seeking damages from the District for violations of the Constitution also could not have been brought against Embassy Services in that action.  The

causes of action in this case are accordingly not the same as those in the Superior Court for purposes of claim preclusion.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully submits that Defendant's Motion to Dismiss should be denied.

Dated: November 22, 2013                                  Respectfully submitted,

                                                    _____/s/_____
                                                    William A. Isaacson (DC 414788)
                                                    Thomas W. Keenan
                                                    Attorneys for Plaintiff
                                                    Boies, Schiller & Flexner, LLP
                                                    5301 Wisconsin Avenue, NW
                                                    Washington, DC 20015
                                                    (202) 237-2727