_____

Case No. 1:13-cv-01456-EGS
_____

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**
_____

BENJAMIN COLEMAN, through his Conservator,
ROBERT BUNN, et al.

*Plaintiffs*,

v.

DISTRICT OF COLUMBIA.

*Defendant*.
_____

**AARP AMICUS BRIEF IN SUPPORT OF PLAINTIFFS**
_____

JULIE NEPVEU
(DC Bar #458305)
AARP FOUNDATION LITIGATION
601 E Street, NW
Washington, DC 20049
Tel: (202) 434-2075
Fax: (202) 434-6424
jnepveu@aarp.org

Counsel for Amicus Curiae AARP

## CORPORATE DISCLOSURE STATEMENT

The Internal Revenue Service has determined that AARP is organized and operated exclusively for the promotion of social welfare pursuant to Section 501(c)(4) (1993) of the Internal Revenue Code and is exempt from income tax. AARP is also organized and operated as a non-profit corporation pursuant to Title 29 of Chapter 6 of the District of Columbia Code 1951.  Other legal entities related to AARP include AARP Foundation, AARP Services, Inc., Legal Counsel for the Elderly, and AARP Insurance Plan, also known as the AARP Health Trust. AARP has no parent corporation, nor has it issued shares or securities.

/s/Julie Nepveu
Julie Nepveu
(DC Bar #458305)
AARP Foundation Litigation
Counsel for Amicus Curiae AARP

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ..........................................................i

TABLE OF AUTHORITIES ....................................................................iv

STATEMENT OF INTEREST ..................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................2

ARGUMENT ........................................................................................4

I.   OLDER HOMEOWNERS FACE A DISPROPORTIONATE RISK
     OF TAX LIEN FORECLOSURE SALES .......................................................4

     A.   Older homeowners face extraordinary economic pressures
          that make them disproportionately vulnerable to tax sale....................5

     B.   Many older people are at risk of tax sales because they no
          longer pay their taxes into an escrow account ...................................7

     C.   Older homeowners are at increased risk of losing their home
          to a tax sale because they have a significantly higher incidence
          of isolation, disability, and diminished capacity.................................10

II.  HOMEOWNER'S EQUITY SHOULD BE CONSTITUTIONALLY
     PROTECTED CONSIDERING THE PARTICULAR
     CIRCUMSTANCES AND DEVASTING CONSEQUENCES OF
     TAX SALES THAT DO NOT PROTECT SURPLUS EQUITY.................12

     A.   The practicalities and peculiarities of tax sales require protecting
          surplus upon a sale to collect taxes .....................................................12

     B.   The devastating consequences of losing surplus home equity
          in a tax sale should be weighed against the states interest in
          collecting a comparatively small amount of tax in proportion
          to the value of a home .........................................................................13

CONCLUSION .................................................................................................... 14

CERTIFICATE OF SERVICE ............................................................................. 15

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Covey v. Town of Somers*, 351 U.S. 141 (1956) .....................................................12

*Jones v. Flowers*, 547 U.S. 220 (2006) ....................................................................12

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ....................12

*Robinson v. Hanrahan*, 408 U.S. 38 (1972) ............................................................12

## <u>District of Columbia Statute</u>

D.C. Fiscal Year 2015 Budget Support Act of 2014,
     A20-424, § 7102(c)(30) ....................................................................................14

## <u>Other Authorities</u>

William C. Apgar and Zhu Xiao Di, *Housing Wealth and*
     *Retirement Savings: Enhancing Financial Security for*
     *Older Americans*, Joint Ctr. for Hous. Studies at Harvard Univ.,
     (Sept. 2005), http://bit.ly/20P7XaF. ...............................................................5

Kermit Baker, et al., *Housing America's Older Adults:*
     *Meeting the Needs of an Aging Population*.
     Joint Ctr. for Hous. Studies at Harvard Univ. (2014),
     http://bit.ly/1umYrKY .....................................................................................5

Sudipto Banerjee, *Income Composition, Income Trends, and*
     *Income Shortfalls of Older Households*,
     Emp. Benefit Research Inst. Issue Br.,
     No. 383 (Feb. 2013), http://bit.ly/ltYkntI .......................................................7

Debbie Gruenstein Bocian, et al., Lost Ground, *2011:*
     *Disparities in Mortgage Lending and Foreclosures*
     Ctr. for Responsible Lending (2011),
     http://bit.ly/1q1Oelm ......................................................................................4

Ctr. for Disease Control, Division of Diabetes Translation,
   *Common Eye Disorders*, Nat'l Cntr for Chronic Disease
   Prevention and Health Promotion (Ap. 23. 2013),
   http://1.usa.gov/1kX2AV3..............................................................................11

Craig Copeland, *Debt of the Elderly and Near Elderly 1992-2010*,
   43 Emp. Benefit Research Inst. 2 (Feb. 2013),
   http://bit.ly/UofvU r..........................................................................................6

*Executive Summary*: *Spotlight on Senior Hunger 2011*,
   Feeding Am. and Am. and Nat'l Found. To End Senior Hunger
   (May 2013), http://bit.ly/1qX0Wjo ............................................................7, 8

David Marson and Charles Sabatino, *Financial Capacity in an Aging Society*,
   Generations (J. of the Am. Soc. on Ag.) (Summer 2012),
   http://bit.ly/1moAJI .......................................................................................10

John Rao, *The Other Foreclosure Crisis*: *Property Tax Lien Sales*, Nat'l
   Consumer Law Ctr. (Jul. 2012), http://bit.ly/1MLTZMc.....................4, 8, 10

Jeannine S. Schiller et al., *Summary Health Statistics for U.S. Adults:
   National Health Interview Surv. 2010*
   U.S. Dep't of Health & Human Servs. (2012) .......................................10, 11

Amy Traub, *In the Red: Older Americans and Credit Card Debt*,
   AARP Pub. Policy Inst. Middle Class Sec. Project (Jan. 2013),
   http://bit.ly/lo5wCHI .......................................................................................6

Lori Trawinski, *Nightmare on Main Street: Older Americans and the
   Mortgage Market Crisis*, AARP Pub. Policy Inst. (July 2012),
   http://bit.ly/XLk7FC .....................................................................................13

U.S. Dep't of Hous, and Urban Devel, Home Equity Conversion
   Mortgage (HECM) Financial Assessment and Property Charge
   Requirements, Mortgagee Letter 2014-22 (Nov. 10, 2014),
   http://1.usa.gov/1MYKrnm ..............................................................................9

U.S. Dep't of Hous. and Urban Devel., *Homeownership and
   Its Benefits*, Urban Pol. Brief, Number 2 (1995),
   http://bit.ly/1AzFo2X.......................................................................................2

U.S. Dep't of Hous. and Urban Devel, Loss Mitigation Guidance
for Home Equity Conversion Mortgages (HECMs) in Default
due to Unpaid Property Charges, Mortgagee letter 2015-11
(Ap. 23, 2015), http://1.usa.gov/1M8UliV ....................................................9

Brian W. Ward & Jeannine S. Schiller, *Prevalence of*
*Multiple Chronic Conditions Among US Adults: Estimates*
*from the Nat'l Health Interview Survey,*
Preventing Chronic Disease (2013) ............................................................10

Odette Williamson and Jillian McLauglin, *Tax Lien Sales*
*Put Low-Income, Seniors, and the Disabled at*
*Risk of Foreclosure*, 34 Bifocal (Oct. 2012),
http://bit.ly/VFLQWP ..................................................................................5, 7

## STATEMENT OF INTEREST

Losing one's home to a tax sale or foreclosure is both financially devastating and emotionally wrenching.   Approximately 80 percent of older people are homeowners, and they are disproportionately at risk of losing their homes to tax sales. Tax sales resulting from an inadvertent failure by a homeowner to pay taxes—as may result when older people have reduced income later in life, or have difficulty managing their finances, not only forces people out of their homes, but also seriously jeopardizes their financial security.  Such sales therefore deprive the homeowner of significant equity, and in most cases, the only substantial asset they own.

AARP is a nonprofit, nonpartisan organization with a membership that helps people 50+ have independence, choice and control in ways that are beneficial and affordable to them and society as a whole.   As the leading organization representing the interests of people aged 50 and older, AARP advocates nationally protecting older homeowners from improper and unfair tax sales and abuse in lending, servicing and foreclosure, and other mechanisms that strip home equity and destroy their financial security.

AARP has a significant interest in this case because of the impact it will have on protecting against the unfair and unjust sale of tax liens to collect often nominal or trivial amounts of taxes in comparison to the value of the home.

AARP's participation in this case as amicus curiae will assist this Court in its consideration of the issues presented, including the importance of protecting surplus equity as a property right.

## INTRODUCTION AND SUMMARY OF ARGUMENT

America historically has sought to encourage homeownership because it provides stability, builds wealth for families and communities, and spurs economic growth. *See* U.S. Dep't of Hous. and Urban Devel., *Homeownership and Its Benefits*, Urban Pol. Brief, Number 2 (1995), http://bit.ly/1AzFo2X. America has prospered economically for sustained periods as a result of high levels of homeownership. President Clinton, like many Presidents before him, expressed the national consensus that "more Americans should own their own homes, for reasons that are economic and tangible, and reasons that are emotional and intangible, but go to the heart of what it means to harbor, to nourish, to expand the American Dream." Similarly, Ronald Reagan recognized that homeownership "supplies stability and rootedness" and Lyndon Johnson promoted homeownership as part of a strategy for addressing the urban ills of the 1960s, declaring that "owning a home can increase responsibility and stake out a [person's] place in [the] community. . . .The [person] who owns a home has something to be proud of and reason to protect and preserve it." *Id*.

Loss of home equity due to a tax lien sale has a particularly disproportionate negative impact on older homeowners, who face a higher risk of tax foreclosure and often rely on the equity in their homes as the primary or sole investment to sustain them through their lifespan.  Tax sales have increased dramatically since the Great Recession, as homeowners struggle to stay above water despite rising costs (including taxes), lower incomes, and the loss of significant home equity and retirement assets.  Older homeowners often have no mortgage or mortgages that do not provide them escrow accounts that can assist with making timely tax payments.  Older people and people with disabilities also face a disproportionate risk that they will lose their homes to tax sales because of difficulties managing their finances, diminished capacity, or reduced mobility.

Courts should protect homeowners from the loss of home equity due to a tax foreclosure sale.

**ARGUMENT**

## I.   OLDER HOMEOWNERS FACE A DISPROPORTIONATE RISK OF TAX LIEN FORECLOSURE SALES.

The economic crisis that triggered millions of mortgage foreclosures nationwide also triggered an alarming nationwide increase in tax related sales of homes. *See* John Rao, *The Other Foreclosure Crisis*: *Property Tax Lien Sales*, Nat'l Consumer Law Ctr. at 10-11 (Jul. 2012) [hereinafter "*The Other Foreclosure Crisis*"], http://bit.ly/1MLTZMc.  Foreclosures have lowered property values and tax revenues alike, negatively impacting both homeowners and the communities in which they live. *See* Debbie Gruenstein Bocian, et al., *Lost Ground, 2011: Disparities in Mortgage Lending and Foreclosures 7*, Ctr. for Responsible Lending (2011), http://bit.ly/1q1Oelm.  While facing the continuing effects of an unrecovered economy, a difficult job market, declining home values and high foreclosures, homeowners must also contend with rising property taxes as "[l]ocal governments face financial pressures that necessitate a steady stream of tax revenue." *The Other Foreclosure Crisis*, supra at 5.  "Homeowners who are unable pay their mortgages are likewise struggling to keep up with payments on home property taxes," and "local governments have sought to bridge these budget gaps by instituting more aggressive tax collection practices." *Id*. at 11.

Older people are at particular risk of losing their homes to tax sales for a variety of reasons, including economic hardship, rising costs, increased incidence

of disability and diminished capacity, and having no escrow account for taxes (because they have no mortgage payment, or have a subprime or reverse mortgage). *Id.; see also* Odette Williamson and Jillian McLauglin, *Tax Lien Sales Put Low-Income, Seniors, and the Disabled at Risk of Foreclosure*, 34 Bifocal 1 (Oct. 2012), *available at* http://bit.ly/VFLQWP [hereinafter *Tax Lien Sales*].

### A. Older homeowners face extraordinary economic pressures that make them disproportionately vulnerable to tax sale.

Rising costs and lower income plays a significant role in making older people extremely vulnerable to losing their homes through tax sales. *See* William C. Apgar and Zhu Xiao Di, *Housing Wealth and Retirement Savings: Enhancing Financial Security for Older Americans*, Joint Ctr. for Hous. Studies at Harvard Univ., W05-8-1 16 (Sept. 2005), http://bit.ly/20P7XaF; Kermit Baker, et al., *Housing America's Older Adults: Meeting the Needs of an Aging Population.* Joint Ctr. for Hous. Studies at Harvard Univ. 16 (2014), http://bit.ly/1umYrKY (describing housing as the lynchpin of well-being) ("As the single largest item in most household budgets, housing costs directly affect day-to-day financial security as well as the ability to accrue wealth to draw upon later in life."). Even older people who own their homes outright have significant housing related costs, including taxes, utilities, insurance, and repairs and maintenance. *See Housing Wealth and Retirement Savings: Enhancing Financial Security for Older Americans* at 16. These costs are often unaffordable to older people who no longer

5

work and have limited retirement income. *Id*. Among the 20 percent lowest income 65+ seniors, 5.1 million own their homes free and clear of any debt. *Id*. Of those homeowners without mortgage debt, however, one in four pays 50 percent or more of their income for housing costs, such as taxes and utilities. *Id*. For homeowners still paying off their mortgage debt but living at the lower economic margins, the vast majority are paying most of their income for housing costs. *Id*.

Older Americans long have been considered among the most resistant to debt due to their generally conservative attitude toward spending. Changing economic conditions have made debt a more serious issue for them, however, especially in recent years. The median income of people aged 50+ was lower in 2009 than it was in 1997 due in part to declining pension and investment income, waning employment prospects, and longer periods of unemployment than their younger counterparts. *See* Amy Traub, *In the Red: Older Americans and Credit Card Debt*, AARP Pub. Policy Inst. Middle Class Sec. Project 7 (Jan. 2013), http://bit.ly/1o5wCHl. At the same time, costs for basic expenses such as housing, utilities, prescription drugs, and health care are continuously rising: a living wage is typically 3 to 4 times the federal minimum wage, which has not kept pace with inflation. *See id*. at 5; *see generally* Craig Copeland, *Debt of the Elderly and Near Elderly 1992-2010*, 43 Emp. Benefit Research Inst. 2 (Feb. 2013),

6

http://bit.ly/UofvUr.   As a result, many people enter their retirement years incurring expenses for basic needs that exceed their income—particularly for home-related expenses and health care.   *See* Sudipto Banerjee, *Income Composition, Income Trends, and Income Shortfalls of Older Households*, Emp. Benefit Research Inst. Issue Br., No. 383, 13, 14 (Feb. 2013), http://bit.ly/1tYkntI. Approximately two-fifths of families that include a person over age 65 have an income shortfall.  *See id*. at 11.

Older homeowners struggling with chronic income shortfalls may have great difficulty keeping up with their taxes.  Indeed, the situation is particularly dire for older people in the lowest income brackets, who suffer hunger or food insecurity due to income shortfalls.  "In 2011, almost one in every 12 people above the age of 60 in the United States was food insecure.  That represents 4.8 million seniors nationwide, which is more than double the number of food insecure seniors in 2001."  *Executive Summary: Spotlight on Senior Hunger 2011*, Feeding Am. and Am. and Nat'l Found. To End Senior Hunger (May 2013), http://bit.ly/1qX0Wjo.

### B.   Many older people are at risk of tax sales because they no longer pay their taxes into an escrow account.

For many people with a mortgage, a portion of their taxes are collected with the monthly payment and held in an escrow account until the taxes are due.  At that time, the mortgage servicer pays the taxes directly to the taxing authority.  Paying off one's mortgage plays a significant role in the increase of tax sales.  *See Tax*

*Lien Sales*. Upon paying off a mortgage, however, a homeowner assumes the responsibility of setting aside sufficient funds to pay the taxes when they become due and must make the payments directly. This adjustment can create significant problems for older homeowners, particularly for those who have difficulty with financial decision making or have diminished capacity or disabilities.

Similarly, homeowners who have subprime mortgage loans face challenges paying their taxes. *The Other Foreclosure Crisis*, supra at 5. Few subprime lenders collected and paid taxes for the homeowner prior to 2010, when federal laws were changed to require most mortgage loans to have escrow accounts for taxes and insurance. "Some lenders used the lower monthly loan payment without an escrow to induce consumers into believing the loans were affordable. Of course, [] the monthly mortgage payments on many of these loans were unaffordable even without considering property tax obligations." *Id*.

Reverse mortgages also do not generally feature escrow accounts for taxes.[1] As with older homeowners who no longer make mortgage payments, those with

---

[1] Reverse mortgages are usually insured through the Home Equity Conversion Mortgage (HECM) Program administered by the U.S. Department of Housing and Urban Development (HUD). Borrowers aged 62 and over can obtain either a lump sum or a line of credit based on the value of their home. They are not required to make payments on the reverse mortgage while they continue to live in the home, but they must carry hazard insurance, maintain the property, and make their tax payments. HUD revised the HECM guidelines, effective April 27, 2015 to require reverse mortgage lenders to assess borrower's ability to pay their taxes, and to set aside a portion of the proceeds to cover the taxes if it appears the borrower will be

reverse mortgages are required to manage tax payments on their own. Increasingly, people over age 62 take out a reverse mortgage as a means to access the equity in their home while continuing to live in it. Reverse mortgage servicers are required to protect the security for the reverse mortgage by paying the property tax on the owners' behalf if the borrower becomes delinquent.

While this may appear beneficial at first glance, in reality it simply shifts to the reverse mortgage the risk of foreclosure. HUD requires the servicer to declare the mortgagee due and payable if the borrower does not repay the property tax advance. Additionally, HUD recently amended the loss mitigation requirements applicable to tax defaults. U.S. Dep't of Hous. And Urban Devel, Loss Mitigation Guidance for Home Equity Conversion Mortgages (HECMs) in Default due to Unpaid Property Charges, Mortgagee letter 2015-11 (Ap. 23, 2015), http://1.usa.gov/1M8UliV. While borrowers may be able to obtain a repayment plan for up to five years, the taxes must be repaid in a lump sum after foreclosure has been initiated. This loss mitigation limitation defeats the purpose of the legal and financial assistance programs that are available after a foreclosure has been filed in the District of Columbia.

---

unable to remain current on their taxes. *See* U.S. Dep't of Hous, and Urban Devel, Home Equity Conversion Mortgage (HECM) Financial Assessment and Property Charge Requirements, Mortgagee Letter 2014-22 (Nov. 10, 2014), http://1.usa.gov/1MYKrnm.

**C.    Older homeowners are at increased risk of losing their home to a tax sale because they have a significantly higher incidence of isolation, disability, and diminished capacity.**

"Homeowners most at risk [of losing their homes to tax sales] are those who have fallen into default because they are incapable of handling their financial affairs, such as individuals suffering from Alzheimer's, dementia, or other cognitive disorders." *The Other Foreclosure Crisis*, supra at 5.  The risk of having such disorders increases exponentially with advancing age.  *See* David Marson and Charles Sabatino, *Financial Capacity in an Aging Society*, Generations (J. of the Am. Soc. on Aging), vol. 36, no. 2 (Summer 2012), http://bit.ly/1moAJIL.  Similarly, isolation caused by physical illnesses or being unable to drive increases the risk of being subject to a tax sale.

Older people are at greater risk of a tax sale when they have serious health conditions, dementia, or have difficulty paying their taxes because they no longer drive and lack of access to transportation.  Because older adults are more likely to experience chronic health conditions, such as heart disease and diabetes, they face heightened risks for becoming secluded and homebound.  *See* Brian W. Ward & Jeannine S. Schiller, *Prevalence of Multiple Chronic Conditions among US Adults: Estimates from the Nat'l Health Interview Survey*, 10 Preventing Chronic Disease 1, 5 (2013); *see* also Jeannine S. Schiller et al., *Summary Health Statistics for U.S. Adults: Nat'l Health Interview Survey, 2010*, U.S. Dep't of Health & Human Servs.

10

at 19 (2012) (older adults suffer from heart disease at rate three times higher than younger adults).

Older people are also at risk of foreclosure due to the small font sizes and legalistic language commonly used in government notices.  For example, vision impairments are disproportionately prevalent in older people.  As part of the natural aging process, many people begin to have trouble reading small print beginning in their 40s.  Added to that are disease processes common in older people that may cause cataracts and macular degeneration, among others. Ctr. for Disease Control, Division of Diabetes Translation, *Common Eye Disorders*, Nat'l Cntr for Chronic Disease Prevention and Health Promotion (Ap. 23. 2013), http://1.usa.gov/1kX2AV3.

It is vitally important to note that the high prevalence of such conditions also has a disproportionate impact on the group of older homeowners least likely to enjoy the protection provided by having an escrow account to pay taxes. Unfortunately, the reality of an aging population and the increased incidence of diminished capacity increase the risk that older people will lose their homes to a tax sale.

## II.   HOMEOWNER'S EQUITY SHOULD BE CONSTITUTIONALLY PROTECTED CONSIDERING THE PARTICULAR CIRCUMSTANCES AND DEVASTING CONSEQUENCES OF TAX SALES THAT DO NOT PROTECT SURPLUS EQUITY.

### A.   The practicalities and peculiarities of tax sales require protecting surplus equity upon a sale to collect taxes.

The demands of due process and other fundamental rights must adjust to the reality of the people most at risk of losing their homes to tax sale.  It is essential that courts take such "practicalities and peculiarities of the case . . . into account in determining whether constitutional requirements were met." *Jones v. Flowers*, 547 U.S. 220, 232 (2006) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-315 (1950).  The *Jones* Court reiterated the necessity of taking unique circumstances into account when examining the adequacy of a notice of a tax foreclosure, stating:

> In prior cases, we have required the government to consider unique information about an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case.   In *Robinson* v. *Hanrahan,* [408 U.S. 38 (1972),] we held that notice of forfeiture proceedings sent to a vehicle owner's home address was inadequate when the State knew that the property owner was in prison.  409 U.S. at 40.  In *Covey* v. *Town of Somers*, 351 U.S. 141 (1956), we held that notice of foreclosure by mailing, posting, and publication was inadequate when town officials knew that the property owner was incompetent and without a guardian's protection. *Id.*, at 146-147. . . .

*Jones v. Flowers*, 547 U.S. at 230 (string cites omitted).

12

Thus, tax authorities should take into account the factors, discussed above, that put older people at greater risk of losing their homes to tax sale.

**B.    The devastating consequences of losing surplus home equity in a tax sale should be weighed against the states interest in collecting a comparatively small amount of tax in proportion to the value of a home.**

As discussed above, older homeowners increasingly are at risk of losing their biggest investment and the financial stability homeownership affords.  A tax sale that fails to return the surplus equity to the homeowner may result in impoverishment.

> Older Americans often used their home equity in retirement to finance health care, home maintenance, and other large expenses and as a safety net that could be used to meet unexpected needs.  Others planned to sell their home to downsize, move closer to family, or to finance a move into an assisted living facility or continuing care retirement community.  For most older people, the home is, or in some cases, was, their most valuable asset.

Lori Trawinski, *Nightmare on Main Street: Older Americans and the Mortgage Market Crisis* 3, AARP Pub. Policy Inst. (July 2012), http://bit.ly/XLk7FC, (reporting that approximately1.5 million families headed by a person over age 50 lost their home to mortgagee foreclosure between 2007 and 2011).

The District of Columbia recognized the importance of protecting surplus equity in the tax sale process.  In 2014, the District amended its tax-sale law to ensure that owner-occupant homeowners will retain substantially all of the equity

remaining after the taxes and expenses of the suit are satisfied. *See* D.C. Fiscal Year 2015 Budget Support Act of 2014, A20-424, § 7102(c)(30).

The constitution should protect the right of homeowners to their surplus equity upon sale to collect taxes, which can easily be accomplished without infringing on the legitimate interest of the state to collect taxes, as demonstrated by the statutory amended enacted by the District of Columbia.

## CONCLUSION

Respectfully, AARP urges this Court to find that homeowners have a constitutionally protected property interest in the surplus equity in their homes that are sold at tax sale.

Dated November 12, 2015             Respectfully submitted,


                                    s/Julie Nepveu
                                    Julie Nepveu
                                    (DC Bar #458305)
                                    AARP Foundation Litigation
                                    601 E Street, NW
                                    Washington, DC 20049
                                    Tel: (202) 434-2075
                                    Fax: (202) 434-6424
                                    jnepveu@aarp.org

                                    Counsel for Amicus Curiae AARP

14

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2015, I caused the foregoing Amicus Brief in Support of Plaintiffs to be filed with the Court through the Court's CM/ECF system.  Counsel of record are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/Julie Nepveu
Julie Nepveu
(DC Bar #458305)
AARP Foundation Litigation
Counsel for Amicus Curiae AARP