**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Benjamin Coleman, et al.,<br><br>                        Plaintiffs,<br><br>         v.<br><br>District of Columbia,<br><br>                   Defendant. | Civil Action No. 1:13-cv-01456-EGS |

## UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT

William A. Isaacson
Boies Schiller Flexner LLP
1401 New York Ave NW
Washington, DC 20005
(202) 237-2727
*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

I.     INTRODUCTION ................................................................................... 1

II.    PROCEDURAL HISTORY.................................................................... 2

III.    BASIC TERMS OF THE PROPOSED SETTLEMENT ....................... 4

    A.    Settlement Payments ................................................................ 4

    B.    Attorneys' Fees and Service Awards ...................................... 5

    C.    Persons Not Included in Settlement Class ............................. 5

    D.    Release by Class Members ..................................................... 6

    E.    Notice ..................................................................................... 6

    F.    Final Approval or "Fairness" Hearing .................................. 6

IV.    ARGUMENT ......................................................................................... 6

    A.    The Proposed Settlement Should Be Preliminarily Approved. ................ 7

    1. The Settlement is the Result of Arm's-length Negotiations. .................. 7

    2. Settlement Terms are Favorable in Relation to Strength of Case. ........... 8

CONCLUSION............................................................................................................... 12

i

## TABLE OF AUTHORITIES

**CASES**                                                                                    **Page(s)**

*Aliotta v. Gruenberg*, 237 F.R.D. 4 (D.D.C. 2006) ...................................................... 10

*Blackman v. District of Columbia*, 454 F.Supp.2d 1 (D.D.C. 2006) .............................. 9

*Equal Rights Ctr. v. Washington Metro. Area Transit*, 573 F. Supp. 2d 205
    (D.D.C. 2008) ........................................................................................................ 8

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y.
    2000) ...................................................................................................................... 10

*In re Vitamins Antitrust Litig.*, 2001 WL 856292 (D.D.C. Jul. 25, 2001) .................. 7, 8

*Luevano v. Campbell*, 93 F.R.D. 68 (D.D.C. 1981).......................................................... 9

*McBean v. City of New York*, 228 F.R.D. 487 (S.D.N.Y. 2005)..................................... 11

*Meijer, Inc. v. Warner Chilcott Holdings Co. III*, 565 F. Supp. 2d 49 (D.D.C.
    2008) ....................................................................................................................... 8

*Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37 (D.D.C. 2010)................................. 8

*Richardson v. L'Oreal USA, Inc.*, 951 F. Supp. 2d 104 (D.D.C. 2013) ...................... 6, 8

*Thomas v. Albright*, 139 F.3d 227 (D.C. Cir. 1998) ....................................................... 9

*Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20 (D.D.C. 2011).......................... 7, 8, 9

**STATUTES**

D.C. Code § 47-1370(b) (2013)....................................................................................... 2

**TREATISES**

Manual for Complex Litigation (Third) § 30.41 (1999)................................................. 7

*Newberg on Class Actions* (5th ed. 2016)........................................................... 7, 8, 10

## I.     INTRODUCTION

Plaintiffs Benjamin Coleman and the Estate of Jean Robinson, individually and on behalf of a certified class of property owners who lost surplus equity in their home, hereby submit this motion for preliminary approval of a settlement with Defendant District of Columbia ("the District," and collectively, "the Parties").  By this motion, Plaintiffs request the Court to approve on a preliminary basis the fairness and adequacy of the settlement so that notice of the settlement may be sent to the class.

Pursuant to a Settlement Agreement with the District, and as described in more detail below, the District has agreed to pay a settlement class of an estimated twenty-one former homeowners a settlement capped at $1.3 million plus an amount for claims administration.  The District has agreed to pay Settlement Class members, up to the capped amount, a recovery on a sliding scale from 35% to 65% of the tax assessment value of their properties.  As is obvious from these formulas, class members will receive tens of thousands each depending on the value of their former home.  Based on extensive efforts to identify class members, the parties estimate that slightly more than $1 million will be distributed to class members based on these formulas.

This settlement provides a certain recovery for the class in the face of the numerous legal defenses being litigated by the District.  It avoids protracted and fact-specific litigation about the valuation of individual homes that were sold in distress sales.  This settlement is also advantageous because it will provide monies to an aging class whose members will benefit from monies this year and not years from now after appeals of the legal issues in this case have been completed.  The class fund will not be reduced by attorneys' fees and costs because, given the nature of this case, class counsel has agreed to waive any claims for fees and to absorb the litigation costs for the action.

1

At this preliminary approval stage, courts determine if the settlement agreement, on its face, fall "within the range of possible approval" and "does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys." *Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 23 (D.D.C. 2011). Because the settlements provide substantial monetary relief to the Settlement Class, and were negotiated extensively at arms-length by experienced counsel working with an experienced mediator, they are well within the range of possible approval and should be preliminarily approved by the Court under Federal Rule of Civil Procedure 23(e).

Plaintiffs respectfully request that the Court enter the attached proposed Order preliminarily approving:  (1) the fairness and adequacy of the settlement; (2) the form of notice to Class Members; (3) the appointment of the Claims Administrator; and (4) the schedule for notices, objections, opt-outs, claim submissions, and final approval.

## II.    PROCEDURAL HISTORY

The Court is familiar with the facts and claims in this matter.  On September 24, 2013, Benjamin Coleman brought this lawsuit and class action against the District of Columbia seeking damages arising from the District's unconstitutional taking and selling to third parties the property of its citizens who owe unpaid real property taxes.  Under the law at issue, the District sold to a purchaser at a property tax auction the real property of a delinquent taxpayer and, upon foreclosure, authorized a court to vest title in fee simple in the purchaser. D.C. Code § 47-1370(b) (2013).  The law took title and all equity in the property from a homeowner regardless of how much equity the homeowner had in the property or how little taxes he or she owed.

In challenging the constitutionality of this law under the Fifth Amendment, Mr. Coleman sought to represent all District property owners who suffered a loss of excess equity due to the District's tax-sale law.  In October 2013, the District filed a Motion to Dismiss Mr. Coleman's complaint (Docket No. 5), which the Court subsequently denied (Docket No. 18).  In January 2014, Mr. Coleman moved to certify the class (Docket No. 12).  The Court denied Mr. Coleman's motion without prejudice, allowing Mr. Coleman to amend his Complaint to add a second named plaintiff, the Estate of Jean Robinson, and to re-file an amended motion for class certification   *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 71, 88 (D.D.C. 2015), 306 F.R.D. 68, 72 (D.D.C. 2015) (Docket No. 30).   In January 2015, Plaintiffs' filed another Motion for Class Certification (Docket No. 31).  Following supplemental briefing on the issue of numerosity (Docket Nos. 35-36), the Court granted Plaintiffs' Motion for Class Certification in April 2015 (Docket Nos. 39, 42), certifying the following class:

> All persons who owned residential property on which the District assessed a lien for an unpaid property tax deficiency, and where following the sale of a tax deed, such property was foreclosed upon and title transferred pursuant to D.C. Code §§ 47-1330 to 47-1385 and where such property included equity above the amount of real estate taxes, interest, penalties, expenses and attorney's fees at the time a tax deed was issued.

*Id.* at 73-74.

The Parties commenced discovery in May 2015 (Docket No. 46) and began settlement negotiations with the assistance of a mediator from the District Court's mediation program, Ava Abramowitz Esq.  In June 2015, the District filed a Motion for Judgment on the Pleadings (Docket No. 46), which the Court subsequently denied (Docket No. 59).  The parties thereafter continued settlement discussions and entered into a settlement agreement on December 30, 2016.

### III.    BASIC TERMS OF THE PROPOSED SETTLEMENT

At all times, the settlement negotiations between Plaintiffs and the District were adversarial, non-collusive, and at arm's length.  Prior to these negotiations, the Parties engaged in vigorous and often difficult litigation.

The proposed Settlement Agreement is attached as Exhibit A.  The Settlement, if approved, will provide an exemplary recovery for the Settlement Class Members. The components of the Settlement are as follows:

### A.  Settlement Payments

Pursuant to the Settlement Agreement, the District will pay up to $1,306,000.00, which will fund: (1) individual payments to class members who claim their portion of the proceeds and do not opt-out, and (2) settlement administration costs.  Within fifteen days after entry of the Preliminary Approval Order, the District will deposit $6,000.00 into the Settlement Fund for costs associated with providing the class with notice of the settlement and administering settlement claims.  Only actual expenses for settlement administration costs will be deducted from the fund.  Fifteen days after final approval and the expiration of appeal rights, the District will deposit an additional $1,000,000.00 into the Settlement Fund for paying individual class members. Any additional funds required, up to an additional $300,000.00 (to meet the total cap of $1,306,000.00) shall be payable within fifteen business days of a certification by the Claims Administrator that total claims have been submitted in excess of $1,000,000.00.

The amount of each sum recovered by a member of the Settlement Class shall be based upon the Statutory Damages as described in the Settlement Agreement.  These Statutory Damages are calculated by the settlement formulas as applied to the tax assessment valuation of the properties and are listed in Appendix A to the Settlement Agreement.  Settlement funds shall

be disbursed to class members based on valid claims on a claims-made basis. Any unclaimed funds shall be returned to the District.

All members of the Settlement Class who submit a complete claim election form shall recover a sum equal to the percentages described in the Settlement Agreement:

    a. For Blighted Properties, as listed in Appendix B to the Settlement Agreement, 35% of the Statutory Damages.

    b. For properties where the owner did not live at the properties, as listed in Appendix B to the Settlement Agreement, 55% of Statutory Damages.

    c. For non-lead plaintiffs who lived at the properties, as listed in Appendix B to the Settlement Agreement, 65% of Statutory Damages

    d. For lead plaintiffs (Class Representatives), as listed in Appendix B to the Settlement Agreement, 65% of Statutory Damages.

If claims exceed $1,300,000.00, the percentages listed above will be adjusted downwards on a pro rata basis based on the total amount of claims.

**B. Attorneys' Fees and Service Awards**

Class counsel has waived attorneys' fees and/or costs for this case, and the Parties have agreed that the District shall not be liable for any costs, fees, or expenses of any of the Plaintiffs' respective attorneys, experts, advisors, or representatives.

Following final approval, the Parties will request that the Court approve Service Awards for Class Representatives of an additional 10% of statutory damages ("Service Awards"). The Service Awards are in addition to the amounts that the Class Representatives will otherwise receive.

**C. Persons Not Included in Settlement Class**

The Settlement Class, as defined in the Settlement Agreement, excludes certain individuals who were previously included in the class submitted for Court approval. These excluded individuals include one landlord, one foreclosed person who recovered the home, and

thirteen vacant property owners.  The Parties will make their names available to the Court.  The release in this matter will not affect these individuals' ability to bring claims against the District in the future.  The class notice advises them to contact legal counsel.

### D.  Release by Class Members

Upon Final Approval, as defined in the Settlement Agreement, the Class will have released the "District Released Parties" from "Released Claims," all as defined in the Settlement Agreement. All claims by class members who have not opted-out of the Settlement Agreement will be resolved upon Final Approval of the Settlement Agreement.

### E.  Notice

Class Members will be notified of the proposed Settlement terms by having the Claims Administrator mail, within twenty-one days after receipt of the Preliminary Approval Order, the Notice to each member of the Class.  The costs associated with providing notice will be paid from the Settlement Fund.  The proposed form of Notice will be submitted to the Court for approval and will follow the notice the Court previously approved.  *See* Docket No. 42.

### F.  Final Approval or "Fairness" Hearing

At a date set by the Court, the Settlement contemplates that the Court will hold a hearing and, if the Settlement is approved, enter a Final Approval Order approving the Settlement in a manner substantially consistent with the terms and intent of the Settlement Agreement and dismissing all claims against Defendants with prejudice.

## IV.    ARGUMENT

"Preliminary approval of a proposed settlement to a class action lies within the sound discretion of the court," *Richardson v. L'Oreal USA, Inc.*, 951 F. Supp. 2d 104, 106 (D.D.C. 2013), and will generally be granted if it appears to fall "within the range of possible approval"

and "does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys," *Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 23 (D.D.C. 2011) (internal quotation marks omitted); *see also Newberg on Class Actions* § 13:10 (5th ed. 2016) ("The general rule is that a court will grant preliminary approval where the proposed settlement "is neither illegal nor collusive and is within the range of possible approval").  The Court will consider (1) whether the proposed settlement appears to be "the product of serious, informed, non-collusive negotiations," (2) whether it falls within the range of possible judicial approval, and (3) whether it has any obvious deficiencies, such as granting unduly preferential treatment. *In re Vitamins Antitrust Litig.*, No. 99–197, 1999 WL 1335318, at *5 (internal quotation marks omitted).  Courts adhere to an initial presumption of fairness when a proposed class settlement was negotiated at arm's length.  *Newberg on Class Actions* § 13:10 (5th ed. 2016).

The presumption of fairness carries particular weight in the context of preliminary approval. Because preliminary approval is provisional, and is followed by more formal and comprehensive review and objection procedures, any doubts should be resolved in favor of preliminary approval.  *In re Vitamins Antitrust Litig.*, 2001 WL 856292 at *4 (D.D.C. Jul. 25, 2001) (preliminary approval is appropriate absent "obvious deficiencies" raising doubts about the fairness of the settlement) (quoting *Manual for Complex Litigation (Third)* § 30.41 (1999)).

**A.  The Proposed Settlement Should Be Preliminarily Approved.**

***1. The Settlement is the Result of Arm's-length Negotiations.***

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Meijer, Inc. v. Warner Chilcott Holdings Co. III*, 565 F. Supp. 2d 49, 55

(D.D.C. 2008).  Further, a court is likely to conclude that settlement negotiations occurred at arm's-length if "the proposed settlement was preceded by a lengthy period of adversarial litigation involving substantial discovery" or if "settlement negotiations are conducted by a third-party mediator."  *Newberg on Class Actions* § 13:14 (5th ed. 2016).  Here, the Settlement Agreement follows months of discovery and years of arm's-length negotiations between experienced counsel and the District, with the assistance of a court-appointed mediator, Ava Abramowitz.  During and prior to engaging in negotiations, the parties completed fact discovery and briefed the District's Motion for Judgment on the Pleadings, which gave counsel "sufficient information . . . to reasonably assess the risks of litigation vis-à-vis the probability of success and range of recovery."  *Trombley*, 759 F. Supp. 2d at 26.

The Parties' negotiations also proceeded under the supervision and involvement of an experienced mediator from the Court's mediation program. *See In re Vitamins Antitrust Litig.*, No. MDL 1285, 2001 WL 856292, at *5 (D.D.C. July 25, 2001); *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 43 (D.D.C. 2010) (finding that involvement of mediator suggested that negotiations were conducted at arm's length).

The progress of fact discovery prior to settlement and the involvement of both experienced counsel and an experienced mediator confirm that the Settlement Agreement is "the product of serious, informed, non-collusive negotiations."  *Richardson*, 951 F. Supp. 2d at 107.

### 2. Settlement Terms are Favorable in Relation to Strength of Case.

In evaluating a proposed settlement, the Court's "primary role" is to assess the suggested relief in relation to the relative strength of plaintiffs' case, including their ability to obtain recovery at trial.  *Trombley*, 759 F. Supp. 2d at 24; *see Equal Rights Ctr. v. Washington Metro. Area Transit*, 573 F. Supp. 2d 205, 211 (D.D.C.2008) (citing *Thomas v. Albright*, 139 F.3d 227,

231 (D.C. Cir. 1998)); *Blackman v. District of Columbia*, 454 F.Supp.2d 1, 8 (D.D.C. 2006) ("the most important factor" in evaluating a proposed settlement is "comparison of the terms of the proposed settlement with the likely recovery that plaintiffs would realize if they were successful at trial").

The Parties' up to $1,306,000.00 settlement, with actual estimated distribution over $1 million, meets the standard of a fair, adequate, and reasonable outcome in light of the strengths and weaknesses of their respective positions and the risks, time, and costs of continued litigation. All but $6,000 of this sum constitutes proceeds to the class members, allocated based on percentages that range from 35% to 65% of full statutory damages. These percentages are plainly "within the range of possible approval based on other approved class action settlements." *Trombley*, 759 F. Supp. 2d at 25 (collecting cases and finding range of 17% to 24% of potential recovery at trial within range of possible approval).

If this case were to proceed to trial, the time until class members would obtain relief for their damages and injuries would be substantially protracted. *See Luevano v. Campbell*, 93 F.R.D. 68, 89 (D.D.C. 1981) ("the delay in providing relief to the class if this case were to be litigated is a factor strongly supporting the compromise reached by the parties"). In motions briefing to the Court, Plaintiffs have prevailed against the District's major legal defenses, but in further proceedings with respect to the issues of damages, the District would vigorously litigate the value of each property in a battle of appraisal experts, on issues including: (1) the individual or blighted condition of each property; (2) the value of each property (compared to ordinary market value) in a tax/distress sale; (3) and other defenses unique to each property. A major benefit to the class from this settlement is that provides certain and substantial recoveries without further delay, uncertainty or expense.

In addition to the risks of damages issues, a potential appeal could overturn the success Plaintiffs have won to date as to the numerous legal issues and defenses on which this Court has ruled.   Further proceedings on damages followed by an appeal will, at minimum, cause added delay to the final resolution of the case and the time at which class members could receive any compensation.

Further litigation also carries additional risk because of the old age of most of the class members.  The elderly claimants have already spent over three years of litigation waiting for compensation, and this settlement "at least assure[s] partial recovery immediately." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 179 (S.D.N.Y. 2000) (old age of plaintiffs weighed in favor of approving settlement).

The Settlement Class excludes 15 individuals—a one landlord, one foreclosed person who recovered the home, and thirteen vacant property owners—from the original certified class. This Court retains "enormous discretion" to authorize such modification.  *Newberg on Class Actions* § 7.37 (5th ed. 2016) (courts have "authority to alter or amend a certification decision at any time before final judgment" and a duty to monitor "class decisions in light of the evidentiary development of the case").  As became clear in settlement discussions, one class member recovered her home and fourteen class members owned vacant lots or were landlords. Although this group was part of the class, the Complaint in this case was unquestionably directed at the interests of former homeowners. The District intends to defend any case by this group based in part on the contention that they have not suffered the loss of homeowners.  Modifying the class in this way is proper given what Plaintiffs have learned through discovery and settlement negotiations.  *See Aliotta v. Gruenberg*, 237 F.R.D. 4, 13 (D.D.C. 2006) ("The court notes that it may modify or divide the class action as the litigation progresses and more information is known

10

about the appropriate method for bringing the suit.").  Narrowing the class allows for a "quick resolution" of the claims for the benefit of the settlement class. *McBean v. City of New York*, 228 F.R.D. 487, 496 (S.D.N.Y. 2005) (allowing narrowing of class at settlement stage because "quick resolution . . . may be very much in the interests of plaintiffs' proposed class" and noting that narrowing of class did not render class representatives or counsel inadequate).

Through the Notice Plan described below, excluded individuals will receive notice and may pursue their rights separately.  None of the excluded members will lose any rights.  Only three of the vacant lot owners have previously responded to the class notice.  The release in this matter will not affect these individuals' ability to bring claims against the District in the future. And despite vigorous efforts and previous notice to the class, only four of the owners of vacant lots can even be located.

### B. Plaintiffs Propose a Notice Plan Substantively Identical to That which it Previously Approved.

With regard to class action claims that are settled, Rule 23(e) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Rule 23(e) requires that notice of a proposed settlement inform class members of the nature of the pending litigation, the general terms of the proposed settlement, and that any class member may appear and be heard at the fairness hearing.  *Newberg on Class Actions* § 8:17 (5th ed. 2016).  The notice should also be written in "simple, straightforward language."  *Id.*  The notices here, included in Exhibit B, which are modeled on the previously-approved notices, *see* Docket Nos. 41-42, meet this criteria.  In addition to including information found in the certification notices, the settlement notices indicate the terms of the Settlement Agreement, describe the current procedural posture of the case, and describe in detail the implications and requirements of the settlement, along with relevant deadlines.

**C.  The Court Should Set a Final Approval Schedule for the Settlement Agreement.**

Plaintiffs propose the following schedule for final approval of the Settlement:

| Days after Preliminary Approval | Deadline |
|---|---|
| 15 days | District deposits $6,000 into Fund |
| 15 days | Claims Administrator sends notice of settlement to class members |
| 60 days | Class members submit opt-outs, exclusions, and objections (within 45 days of notice being sent) |
| 75 days | Claims Administrator provides invoice to Counsel |
| | Plaintiffs move for final approval |
| 90 days | Final Approval/Fairness Hearing |
| 105 days | District deposits $1,000,000 into Fund (within 15 days of Final Approval) |
| 15 days following final award | Remaining Money reverts to District |

**D.  The Court Should Approve Rust Consulting as Claims Administrator.**

Plaintiffs request that Rust Consulting be approved as Claims Administrator.  Rust Consulting previously assisted with providing Class Notice and has the experience necessary to manage the administration of the Settlement Fund.

## CONCLUSION

For all the foregoing reasons, Plaintiffs request that the Court 1) grant its Motion for Preliminary Approval; 2) approve the proposed notices attached as Exhibit B and authorize their dissemination to the class; 3) appoint Rust Consulting as Claims Administrator; and 4) set deadlines consistent with the Settlement Agreement as outlined herein.

12

Dated: February 3, 2017                    Respectfully submitted,


                                           _/s/ William Isaacson_____
                                           William A. Isaacson
                                           Boies Schiller Flexner LLP
                                           1401 New York Ave NW
                                           Washington, DC 20005
                                           (202) 237-2727
                                           *Attorney for Plaintiffs*